# Western Union Telegraph Co. *v.* Hill.

*Delay in Delivery of Message.*

(Decided May 13, 1909.   Rehearing denied June 30, 1909.—50 South. 248.)

1. *Words and Phrases; Telegraph.*—A telegraph is an apparatus or machine used to transmit intelligence to a distant point by means of electricity.

2. *Same; Telegram.*—A telegram is a message transmitted by a telegraph.

3. *Eminent Domain; Public Use; Telegraphs.*—A telegraph is such a public use as to justify the exercise of eminent domain.

4. *Telegraphs and Telephones; Public Service.*—A telegraph company is bound to serve the public without discrimination.

5. *Same; Limiting Liability by Contract.*—A telegraph company cannot limit liability for negligence by contract.

6. *Same.*—Where the negligence complained of is a failure to deliver the message, the fact that the message offered did not comply with the rules of the company by being upon its regular blanks, but was telephoned to the operator, does not affect the liability of the company.

7. *Same; Transmission of Messages; Duty.*—When a telegraph company receives a message, it becomes its duty to transmit it without delay, and if for any cause it is impossible to transmit it, or if delay is necessary, the sender should be informed, and this is especially true if the message shows on its face the importance of hasty transmission and delivery.

8. *Same; Care Required.*—A telegraph company is not an insurer.

9. *Same; Delivery.*—A message should be delivered as soon after its transmission as is reasonably practicable.

10. *Same; Jury Question.*—What constitutes due dilligence as to prompt delivery is usually a question for the jury.

[Western Union Telegraph Co. v. Hill.]

11. *Same; Rules of Company.*—Telegraph companies have a right to provide reasonable regulation as to the hours in which it will do business, and the reasonableness of the rules will depend largely upon the character of the business done, and the location of the office, and is often a mixed question of law and fact.

12. *Same; Waiver.*—Rules of a telegraph company are designed for the protection and benefit of the company, and of course, may be waived, and it is waived when it receives or transmits messages out of its office hours, especially when that fact is not brought home to the patron.

13. *Same; Delay in Delivery; Form of Remedy.*—An action against a telegraph company for delay in delivery is not necessarily ex contractu, but may be ex delicto for a breach of the duty, injury in such cases being more often the result of a breach of duty imposed by law, or a breach of duty growing out of the contract, than a mere breach of the contract.

14. *Same; Damages; Mental Anguish.*—Where the message was sent by plaintiff's wife to plaintiff announcing that the baby was dying, and was so delayed in the delivery that plaintiff was not able to be present with his wife in time to prepare the body for removal and interment, plaintiff was entitled to recover ex contractu for the amount paid for the transmission of the message, and having sued for the same, was also entitled to recover for mental anguish.

15. *Same; Delay in Delivery; Interstate; Law Governing.*—Where plaintiff's wife from a point in Georgia sent to plaintiff in Alabama a telegram announcing that the baby was dying, and owing to negligent delay in delivery, plaintiff was unable to be present with his wife in time to prepare the body for removal and interment, and no breach of the contract occurred in Georgia, but the negligence causing the delay in delivery occurred in Alabama, in an action ex contractu in Alabama, plaintiff was entitled to recover for mental anguish under the Alabama law, although no such recovery could be had in Georgia.

16. *Same; Delay in Delivery; Evidence.*—The action being for negligent delay in delivering a message, and it appearing that the operator at the receiving office did not know plaintiff's residence, evidence that plaintiff had a telephone in his house, that there was one in the telegraph office and that plaintiff had frequently received messages, from defendant over the phone, was admissible.

17. *Same; Jury Question.*—The facts stated and examined and held to require a submission to the jury as to whether or not in this case defendant had waived its rules as to office hours.

18. *Same; Negligence; Damages.*—A verdict for $1,100.00, for mental anguish is not excessive where it appears that through negligence of the defendant, the delivery of a message was delayed, so as to render plaintiff unable to be present with his wife in time to prepare the body of their deceased child for removal and interment.

19. *Same; Instructions.*—In an action for negligent delay in delivery of message, a charge asserting that although the defendant had adopted office hours, yet if it undertook to transmit the message, the jury had a right to look to that circumstance, the nature of the message, and everything else in the case in saying whether defendant was negligent.

20. *Torts; What Law Governs.*—Where a tort is committed in one state and sued on in another, the lex loci deliciti controls.

21. *Contracts; What Law Governs.*—Provisions in a contract made in another state will be enforced in Alabama only to the extent that the contract is lawful in this state.

22. *New Trial; Quotient . Verdict.*—The fact that jurors agreed among themselves to render a quotient verdict, and afterwards decided not to do so, and did not arrive at their verdict in that manner, does not render the verdict rendered a quotient one, so as to authorize a new trial.

23. *Pleading; In Bar; Sufficiency.*—A plea setting up that the contract was made in another state and should be governed according to its laws, under which plaintiff could not recover for mental anguish, was subject to demurrer since the plea was intended as a plea in bar, but really went only to the measure of damages, which question should be raised by objections to evidence, motions to strike or instruction.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Action by W. W. Hill against the Western Union Telegraph Company for delay in delivery of message. Judgment for plaintiff and defendant appeals. Affirmed.

GEORGE H. FEARONS, CAMPBELL & JOHNSTON, and RUSHTON & COLEMAN, for appellant.—The form of the action is ex contractu and the damages claimed are based upon mental anguish. This character of damages is not recoverable in the state of Georgia where the contract was made, and the rule lex loci contractu governs.—*Evans v. Kittrell,* 33 Ala. 452; *McDougald v. Rutherford,* 31 Ala. 259; 2 Wharton Conflict of Laws, 471, f.; *Harrison's Case,* 119 Ala. 544; 27 A. & E. Ency. of Law, 1042; *Gallagher v. Ins. Co.,* 43 South. 833. It is well established by the weight of authority that the measure of damages for a breach of contract pertains to the substantive rights of the parties, and not to the remedy merely.—Wharton's Conflict of Laws, p. 528; *Thomas v. Western Union,* 61 S. W. 501. Parties are presumed to contract in reference to the laws where the

contract is made.—*Seay v. Palmer,* 93 Ala. 383; *Harrison's Case, supra.* The company may establish reasonable office hours.—*Neal's Case,* 40 Am. St. Rep. 247; *Rawls' Case,* 62 S. W. 136. The fact that it was received before office hours by an agent imposes no duty on the defendant.—*C. of G. Ry. Co. v. Joseph,* 125 Ala. 319. The implied contract is that a message shall be written out and delivered to the addressee and therefore, it was error to permit testimony as to the fact that plaintiff had a telephone in his house, and that the company had transmitted telegraph messages to him by phone previously.—45 Mo. App. 433; 95 Tex. 578; Jones on Teleg. 292. Counsel discuss the damages and insist that they are excessive, and cite authority in support of their contention.

S. H. DENT, JR., for appellee.—The law governing the measure of damages in this case, and as to the right of recovery for mental anguish in Alabama under the facts and circumstances in this case, will be found in the following cases: 100 S. W. 742; 77 Ark. 531; *Jones v. Jones,* 18 Ala. 248; *Weinstein v. Freyer,* 93 Ala. 257; *Gallihery Ins. Co.,* 44 South. 833; *Seay v. Palmer,* 93 Ala. 381. The conclusion of them all is that all questions pertaining to the nature and extent of the remedy are governed by the lex fori. In any event, there was no error in the ruling of the court upon demurrer to the pleas, the reason being that the proper way to reach a claim for damages in a complaint where it contains a good claim is by motion to strike, objections to evidence and specific instructions.—*W. U. T. Co. v. Garthright,* 44 South. 212. Any uniform custom between parties is competent for the purpose of interpreting their relative duties, and of aiding the jury in determining what was reasonable or what was unreason-

able under the circumstances, and hence, it was competent to show that plaintiff had a telephone in his house, and that messages had previously been communicated to him over the same.—*M. & E. R. R. v. Kolb,* 73 Ala. 596; *E. T. V. & G. v. Johnston,* 75 Ala. 596. Conceding that a telegraph company has the right to establish reasonable rules as to office hours, it is contended that rules are made for the benefit of the company and that they may be waived and were waived in this case. —*W. U. T. Co. v. Compton,* 138 Ala. 643. In any event it was a question under the evidence in this case, for the jury to determine. The verdict was not excessive.—*W. U. T. Co. v. Seed,* 115 Ala. 670. The verdict was not quotient verdict.—*Bir. R. L. & P. Co. v. Moore,* 42 South.

MAYFIELD, J.—This was an action by appellee against appellant to recover damages for failure to deliver within a reasonable time a telegram, and that, by reason of such failure on the part of the telegraph company, the plaintiff did not receive the message in time to reach Gainesville, in the state of Georgia, so as to be present with his wife and in time to prepare the body of their child for removal and interment, and claims as actual damages 40 cents paid to the defendant company for sending the message and for mental pain and anguish suffered by the plaintiff in consequence thereof. To this complaint the defendant filed pleas, one setting up the general issue, and special plea No. 2, which was in words and figures as follows: "(2) For further answer to said complaint, the defendant says: That the contract for transmission and delivery of the telegram, for the breach of which this action was brought, was not made in the state of Alabama, but was entered into between the plaintiff's agent and the defendant in the state

of Georgia, and was to be partly performed in the state of Georgia; that said contract is to be be construed and governed according to the laws of the state of Georgia; that under the laws of the state of Georgia, as construed by its highest court, plaintiff cannot recover the special damages for mental pain and anguish claimed in each count of the complaint." To which special plea the plaintiff demurred, and the court sustained the demurrer. The trial was had upon the general issue, and resulted in a verdict for the plaintiff of $1,100.40. The defendant subsequently made a motion to set aside the verdict, because it was contrary to the evidence, because the verdict was excessive, and because it was a quotient verdict. On hearing this motion, upon the affidavit made in connection therewith, the court overruled the motion, and the defendant then and there duly excepted.

The facts as shown by the record are substantially as follows: The wife of plaintiff and his oldest child, 3 1-2 years old, and the one who died, who was about 21 or 22 months old, were at Gainesville, Ga., during the summer of 1906. That the plaintiff was there a while and left about a week before the death of the child, and instructed his wife that, if any change took place in the condition of the child, to wire or phone him at once in order that he might come back. At about 6:30 o'clock Sunday morning, on July 15, 1906, the landlady, Mrs. Bell, with whom Mrs. Hill was stopping, telephoned to the defendant company's office at Gainesville asking the agent to take over the telephone for transmission a telegram reading as follows: "Gainesville, Ga., 7-15-1906. W. W. Hill, 643 South Lawrence street, Montgomery, Come on first train. Baby dying. (Signed) Mrs. W. W. Hill." That the operator got up, dressed, and went to the office of the telegraph company and sent the mes-

sage at 6:43 a. m., Eastern time, to Atlanta, Ga. That the amount paid for the message was 40 cents. That between 6 and 7 a. m. Central time the same morning another agent of the defendant company was on duty at the defendant's office at Montgomery for the purpose of testing wires and to send out linemen, etc. That at 6:15 a. m. Central he got a call from the chief clerk at Atlanta. That the chief clerk at Atlanta said to him, "Take this rush message." That he then took the message over the wire, wrote it out, and hung it on the file where the telegrams always hung and where the delivery clerk got them. That there was no one in the office at the time but him and no messenger boys. That the office hours of defendant in Montgomery in week days were 7 o'clock in the morning and on Sundays 8 o'clock. That the business was conducted at Montgomery as follows: The operators took the message over the wires, and that check boys came around and checked up the messages and carried them to the messenger clerk, and that he fixed them up and sent them out by the messenger boys. That the office was not open for business on Sunday mornings until 8 o'clock. That the agent in the office who received this message had only been in Montgomery about 10 days and did not know the plaintiff's residence. That it also appeared there was a telephone in the office of the Western Union Telegraph office, and that Mr. Hill also had a telephone at his residence. Plaintiff, Mr. Hill, got a message over the long distance telephone from Selma about 8 o'clock informing him of the dangerous condition of his child, and that he left his house at about 8:20 and drove to the depot. That a messenger boy was started with his message at about 8:20. The boy, not finding him at home followed him to the depot and delivered the message at 8:50. That a through train left Montgomery at 6:55 a. m., which went

through Atlanta and by Gainesville, reaching Gaines-: ville at 2 o'clock. That a local train left Montgomery. for Atlanta at 9 :15. Mr. Hill went on this train to At- lanta, wiring his wife to come to Atlanta. He met his wife in Atlanta with the corpse of the child. The train. he went on made no connection at Atlanta. He reached. Atlanta about 2 or 3 o'clock in the afternoon. That: plaintiff telephoned from Atlanta to Gainesville about. making arrangements for bringing the child home. That: there was no relative of his wife at Gainesville at the; time. That his wife reached Atlanta about 6 o'clock in. the afternoon. That he was in Atlanta by himself from 2 o'clock until 6 o'clock. The child died about 8. o'clock on the morning the 15th of July.

Various errors are assigned: First, to the sustaining. of demurrers to defendant's special plea No. 2 and the exclusion of the decision of the Supreme Court of Geor- gia in the case of *Chapman v. Western Union Tel. Co.,* 88 Ga. 763, 15 S. E. 901, 17 L. R. A. 430, 30 Am. St. Rep.. 183, and to the exclusion of certain sections of the Geor- gia Code, and to other rulings as to the evidence and to the giving and refusing of certain charges, and to the refusal of the court to set aside the verdict for the rea- son assigned in the motion.

Probably the most serious question involved in this appeal, and the assignment insisted upon most stren- uously by counsel for appellant, is that under the laws of Georgia, damages are not recoverable for mental an- guish in cases of failure to deliver or delay in delivering telegrams, like the one in question, and that, the con- tract, the basis of this action being made in Georgia, the laws of Georgia govern as to damages recoverable for the delay or failure to deliver the telegram in question. It is insisted by counsel for appellant that the lex loci con-: tractus, and not the lex fori, governs the measure of dam-

ages in this case. The complaint contained two counts, and both are treated as counts ex contractu. It must be conceded that there is much conflict of authorities on the question as to what law governs the recovery in telegraph cases where a telegram is sent from one state to another; some holding that the law of the state in which the telegram originated governs, and others that the law of the state where it is delivered, or where the negligent act complained of or where the breach of the contract occurred, governs as to the measure of damages. It is conceded that the law of the forum will govern in matters pertaining to remedy; but it is insisted by appellant that by "remedy" here is meant such matters as pertain to the character and form of action, evidence, procedure, mode of redress, limitations, executions, etc., and that damages to be allowed, if fixed or limited by law, pertain to the right and not the remedy. So far as we know, this question has not been before passed upon by this court with regard to telegraph cases, though there are a number of cases which may be analogous. As this court has said: "A contract is usually governed as to its nature, obligation, validity, and interpretation by the law of the place where it is made, unless it is to be wholly performed in another state, in which case the place of performance, or in which the parties agree, must govern." 2 Mayfield's Digest, p. 668, subject "Conflict of Laws."

It should be remembered that in this case, as in most cases for failure to deliver or delay in delivering telegraph messages, while a contract is spoken of and the actions are often brought as for a breach of contract, in fact, there is no express contract, or any express agreement. Whatever contract or agreement that exists is an implied one, and is usually, though not always, a

breach of duty imposed by law, rather than a breach of an express contract; but it may be said that it is often, as in this case, a breach of an implied contract.

A "telegraph" is defined as an apparatus or machine used to transmit intelligence to a distant point by means of electricity. A "telegram" is a message or dispatch transmitted by telegraph. A telegraph is such a public use as to justify the exercise of the right of eminent domain and to authorize the sovereign to regulate the business by a proper law. /Telegraph companies are in many respects analogous to common carriers. Like common carriers, they are bound to serve the public without discrimination and cannot evade liability for the consequences of their negligence by any contract. Unlike common carriers, they are not insurers. A telegraph company is therefore an important public agency and an instrument of commerce. Consequently the duties and obligations of a telegraph company do not arise entirely out of contract, being a quasi public institution. This duty, and liability is not measured by the standard of private individuals. The contracts for sending and delivering messages, such as the one in question, give force and effect to these public duties which the law imposes. Some of these duties are to accept for transmission all proper messages tendered by persons who comply, or offer to comply, with the reasonable rules and regulations of the company; but the mere fact that the message offered did not comply with the rules of the company by being on its regular blanks, but is simply telephoned to the operator, does not affect its liability, where the negligence complained of is a failure to deliver after transmission.

Upon the receipt of the message it is the duty of the telegraph company to transmit it without delay, and if from any cause it is impossible to transmit the mes-

sage, or if delay will be necessary, the company should inform the sender; certainly so if the message shows on its face the importance of hasty transmission and delivery. The message, when transmitted, must be delivered to the addressee or his authorized agent. Delivery should be made as soon after transmission as practicable. The duty of early delivery is as necessary as the prompt transmission. What constitutes due diligence as to prompt delivery is usually a question for the jury, and usually depends upon the facts of each particular case. Telegraph companies have a right to provide reasonable regulations as to the hours during which it will do business, and the reasonableness of the regulation will depend largely upon the character of business done, the locality of the office, and is often a mixed question of law and fact; but a telegraph company may waive its rules as to office hours, and it cannot receive or transmit a message out of its office hours, especially when that fact is not brought home to the patron, and then set up that regulation as a defense to an action for a breach of its contract or for its negligence in failing to deliver. These rules, like any other rules of other companies, are designed for the benefit and protection of the company itself, and may be waived expressly or by implication. *Wilson's Case,* 93 Ala. 32, 9 South. 414, 30 Am. St. Rep. 23.

The rule as to the measure of damages against telegraph companies for failure to deliver or to deliver promptly, or for negligence in the transmission and deliver, unfortunately is not well settled, and the decisions of the various courts of the United States are far from being uniform, and many decisions of the same court of many states are conflicting. Actions against telegraph companies, like the one in question, are not necessarily ex

contractu. They may be ex delicto for the breach of a duty; the right of action somewhat depending upon the implied contract of sending as to make the general rule relating to damages for breach of contract applicable. Injury, in such cases, is often the result of a breach of duty imposed by law, or a breach of duty growing out of the contract, than a mere breach of the contract. The contract usually serves merely to show the relation of the parties and the existence of a duty breached, which duty is more often imposed by law than by contract. There is rarely any express contract between the parties. Whatever exists is usually implied. Of course, parties can make contracts with regard to sending and delivery; but we are speaking now of the usual contracts.

Likewise, the authorities are far from uniform as to whether or not damages for mental anguish are recoverable in actions for failure or delay in delivering or transmitting telegrams; some courts holding that they are recoverable in certain actions and not in others, some courts holding that they are recoverable under certain conditions and not under others, and some holding that they are not recoverable in any action or under any condition. These various rulings and conflicting decisions involve various perplexing questions, as to all of which very few agree. One is: Whether the sendee as well as the sender can recover; whether the action is in contract or in tort; whether the mere violation of a contract as to injured feelings, and mental anguish, disconnected and disassociated from physical injury or injury to estate, is an element of damages; to what extent the message must show on its face the relationship of the parties; and whether damages for mental anguish are in their nature punitive or compensatory. However, the rule has been settled in this state, and probably cannot

be better or more succinctly expressed, than was done
by Chief Justice McClellan in the case of *Blount v. Wes-
tern Union Tel. Co.*, 126 Ala. 107, 27 South. 779, as fol-
lows: "The complaint in this case claims damages only
for mental suffering. Such damages are not recovera-
ble in actions for the nondelivery or negligent delivery
of telegrams, except in case where there is a right of re-
covery aside from such injuries. There can be no recov-
ery of actual substantive damages for physical inju-
ries or injuries in estate here, for no such damages are
claimed. There can be no recovery here of nominal dam-
ages as for a breach of contract—to which we have held
that damages for mental suffering may be superadded
—because the complaint is not upon contract, but pure-
ly in tort. No recovery, apart from damages for men-
tal suffering, in other words, can be had on this com-
plaint, and therefore no recovery for mental suffering
can be had." Or by Chief Justice Tyson, in *Westmore-
land's Case*, 151 Ala. 319, 44 South. 383, to this effect:
"Such damages, notwithstanding their elusive charac-
ter, are actual; but they are ordinarily not the natural
result of a breach, and thus not within the contempla-
tion of the parties. In cases where they are not clearly
contemplated, it would be dangerous and unfair in the
extreme to allow them. When the message is between
persons of a close degree of relationship and relates to
exceptional events, such as sickness or death of such re-
lations, in which a failure to deliver obviously compre-
hends mental distress and anguish, we have allowed
such anguish as an item of damages; but to extend as a
natural result the allowance on other occasions would
in our judgment tend to promote and en-
courage a species of litigation more or less
speculative in its nature, and unjust, and oppres-
sive in its result."—*Croker's Case*, 135 Ala. 492,

33 South. 45, 59 L. R. A. 398; *Ayers' Case,* 131 Ala. 391, 31 South. 78, 90 Am. St. Rep. 92; *Water's Case,* 139 Ala. 653, 36 South. 773; *Crumpton's Case,* 138 Ala. 632, 36 South. 517; *Henderson's Case,* 89 Ala. 510, 7 South. 419, 18 Am. St. Rep. 148; *Krichbaum's Case,* 132 Ala. 535, 31 South. 607; *Cunningham's Case,* 99 Ala. 314, 14 South. 579; *Wilson's Case,* 93 Ala. 32, 9 South. 414, 30 Am. St. Rep. 23; *McNair's Case,* 120 Ala. 99, 23 South. 801. As was said by Chief Justice Tyson in *Westmoreland's Case,* above: "It is often a question difficult to determine, whether an action from its mere nature or in its form is in case or assumpsit. * * *. Manifestly the measure of damages in such cases cannot be altered in any material respect by a mere adoption of one form of action rather than another for the redress of the same grievance.

As to the main question involved in this appeal, as to whether the laws of Georgia or of Alabama should control in determining whether or not damages for mental anguish were recoverable in this action, we are met again with the condition that there is more conflict in the decisions, if possible, than of the law of the two states as to which of the two laws, if different, should control. The question has been treated fully in a note to the case of *Gray v. Telegraph Co.,* as reported in 91 Am. St. Rep. 706, in which the annotator concedes the conflict, but probably is constrained to the view that the lex loci contractus controls in such cases. The question has also been reviewed by annotators in the Lawyers' Reports Annotated. See note to the case of *Hughes v. Pa. Co.,* 63 L. R. A. 532. This annotator also concedes the conflict and reviews many of the conflicting decisions. There are various other conflicting decisions than those reviewed by the annotators. The writer of the text in the American and English Encyclopedia of

Law. ([2d Ed.] vol. 27, p. 1079) states the law applicable to this case. "The fact that damages for mental anguish alone are not recoverable under the laws of the state from which the message was sent will not preclude a recovery of such damages in the state to which the message was directed, where the laws of the latter state permit such recovery. Likewise, a recovery for such damages may be had in the state whence the message was sent although they may not be recoverable under the laws of the state where the message was to be delivered. But when the law of the place whence the message was sent and that of the place of delivery both refuse to recognize such damages, they cannot be recovered, although the action may have been brought in a jurisdiction which recognizes the right to recover them."

After a careful examination of all these authorities, we deem the sounder rule to be, in cases like the one at bar, though we do not decide that the same rule would apply in all cases, that the laws of Alabama should govern in this case, for the reason that the complaint, as well as the undisputed evidence, shows that whether the injury was the result of a breach of contract, or whether it was the result of a breach of a duty growing out of a contract or imposed by law, it occurred solely within the state of Alabama, and that the parties to the contract and the contract itself, if any existed, provided for or allowed the contract to be performed partly at least in Alabama. No breach of the contract occurred in the state of Georgia either as alleged in the complaint or as shown by the evidence. No negligent act was alleged to have occurred in that state or was shown by the evidence to have occurred there. The wrong complained of, and if shown to exist by the evidence, occurred in Alabama. The plaintiff resided in Alabama. He had a right to bring

[Western Union Telegraph Co. v. Hill.]

action in the courts of Alabama either for a breach of
the contract or for a breach of duty imposed by law and
the contract together. If the action had been in tort,
rather than in contract, then we think it certain that
the laws of Alabama would control, and we can see no
reason, though there is authority to the contrary, that the
laws of Georgia should control. The general rule seems
to be that, where the right of action is independent of a
contract, the locus of the contract is immaterial and
cannot affect the question of measure of damages recov-
erable. We also think that the great weight of author-
ity supports the proposition that, where a tort is com-
mitted in one state and sued on in another, the lex loci
delicti controls. So if the action at bar could be constru-
ed as one of tort, disconnected from the contract, then,
if the action were brought in Georgia, the laws of Ala-
bama would control.

Chief Justice Stone, in *Fall's Case,* 97 Ala. 433, 13
South. 31, 24 L. R. A. 174, 38 Am. St. Rep. 194, quot-
ing from Chancellor Kent, says that: "If the contract
be made under one government and is to be performed
under another, and the parties had in view the laws of
such other country in reference to the execution of the
contract, the general rule is that the con-
tract in respect to its construction and force
is to be governed by the laws of the country
or state in which it is to be executed." And in quoting
from Mr. Story, he says: "Where the contract is either
expressly or tacitly to be performed in another place,
then the general rule is in conformity to the presumed
intention of the parties that the contract as to its na-
ture, validity, obligation, and interpretation is to be
governed by the law of the place of performance." He
also quotes from the Am. & Eng. Encyc. of Law, as fol-
lows: "As a general rule, the validity of the contract

is to be determined by the law of the place where it is made, unless it appears on its face that it was to be performed or made in reference to the laws of some other place, in which case it will be governed by the laws of the place of performance." This language was quoted by the learned Chief Justice, which evidently met his sanction, though it was made in a dissenting opinion, in which he held that the contract in question was governed by the laws of Minnesota, rather than of Alabama; the majority of the court holding that it was governed by the laws of Alabama.

It is true, as said by the same learned Chief Justice in the same case, that, in entering into contracts, if nothing appear to the contrary, the law of the place silently becomes a part of the contract and determines the measure of the rights it secures, and adds: "This right of comity, however, has limitations. No state will enforce contracts or redress grievances entered into or suffered in another state, if the enforcement involve a breach of legal or moral right as maintained in the law of the forum." It is likewise a fundamental principle that the laws of the state can have no binding force proprio vigore outside of the territorial limits and jurisdiction of the state enacting them. Consequently any provision found in the law of another state authorizing the making of a contract which is obnoxious to the laws of Alabama, as to such obnoxious provisions the contract will not be enforced in Alabama; but it will be enforced in Alabama only to the extent that it is lawful in Alabama. While there are respectable authorities holding that, where a contract is entered into in one state to be performed partly in that state and partly in another, the laws of the state in which the contract was made will control as to the measure of damages, but in a case like this, where the contract of necessity, so far as the breach

[Western Union Telegraph Co. v. Hill.]

complained of was concerned, must be performed wholly within the state of Alabama, then this rule would not apply; that is to say, the breach complained of was delay in delivering a telegram. The parties intended that the telegram should be delivered in Alabama, and it was not contemplated that it could or would be delivered in Georgia. While a part of the transmission would probably be performed in Georgia, that part of the breach of which this action is brought was to be performed wholly in the state of Alabama, and as the breach occurred here, and a part of the injury at least was suffered here, we think the laws of Alabama, and not the laws of Georgia, should control as to the measure of damages. If the breach had occurred in Georgia, rather than in Alabama, then, for the same reason, the laws of Georgia should control, rather than those of Alabama.

There is another strong reason, if not a conclusive one, why the laws of Alabama should govern in this case. It will be observed that the laws of Georgia did not deny that the plaintiff in a case like this suffers damage for mental anguish; but the court merely declares that they are of such nature that they are not recoverable in courts and under the laws of Georgia. We do not think that the courts of Alabama are bound in this respect by the courts of Georgia; but as to whether or not such damages, if suffered, are recoverable in an action like this when brought in the courts of Alabama, is properly decided by the court of Alabama untrammeled by the decisions of any other court. This is the rule that seems to be adopted by the federal court with regard to the recovery of damages for mental anguish, no matter what may be the laws of the state in which the contract was made, or in which the breach occurred, or in which the action is brought. The federal court holds to the rule that such damages are not re-

coverable in the federal court, and that the question is one with respect to which such court will exercise an independent judgment and will not be bound by the holding of the courts of the state in which the cases arise.—*Sklar's Case,* 126 Fed. 205, 61 C. C. A. 281; *Wood's Case,* 57 Fed. 471, C. C. A. 432, 21 L. R. A. 706.

It therefore follows that there was no error in the court sustaining demurrer to plea No. 2, nor in excluding the evidence offered by the defendant as to the laws of Georgia. The demurrer to the plea could have been properly sustained for the reason that it was intended as a plea in bar and only went to the measure of damages, not denying the right of recovery as to nominal damages. Such questions should be raised by objections to the evidence, motions to strike, or instructions by the court.

We likewise see no error in the court allowing plaintiff to prove that he had a telephone in his house, and that there was one in the defendant company's office at Montgomery, and that he had frequently received messages from the defendant company over the telephone.

We find no error in the refusal to give any of the charges requested by the defendant. There was certainly evidence tending to support all of the material averments of the complaint, and consequently the general affirmative charge for the defendant could not have been given as to any one of the counts. What we have said as to the right to recover damages for mental suffering disposes of the charge which sought to limit the recovery to other damages than for mental suffering.

Nor do we think there was any error in that part of the oral charge excepted to by the defendant to the effect that notwithstanding the defendant company may have adopted office hours, if it undertook to transmit and deliver a telegram, the jury had a right to look at that cir-

cumstance, the nature of the telegram, and everything else in the case, in saying whether or not the defendant was negligent in failing to deliver the telegram sooner than it did deliver it. As stated in the opinion above, a telegraph company has a right to adopt rules as to office hours, and have reasonable rules for its own protection; but it also has a right to waive them, and does waive them as to office hours when it accepts a message for transmission and delivery without the office hours without informing the sender of such rules or without explaining to him that it would not be transmitted or delivered until the time. Of course, if the telegraph agent so receiving had no knowledge of the office hours at other offices, and was not chargeable with notice or knowledge thereof, so receiving the message would not be a waiver. However, we hold that in this case there was sufficient evidence to authorize the submission to the jury of the question of waiver of the rules, and to prevent the giving of the general affirmative charge to the jury on this question.

There was likewise no error in the court's overruling defendant's motion for a new trial. The evidence affirmatively showed that it was not void because it was a quotient verdict. The fact that the jurors agreed among themselves to render a quotient verdict, and afterwards declined to do so, and in fact did not arrive at their verdict in that manner, does not make the verdict a quotient one, and is no reason for setting the verdict aside. Whether or not the verdict was excessive no one can tell. There is no standard or rule of computation by which the amount can be determined in this or similar cases. There may be cases where it would be so great that the court might say that it was arbitrary or intended as punishment, when no such punitive damages can be

allowed, and in such case it might be set aside; but this is not such a case.

Finding no error in the record, the case must be affirmed.

DOWDELL, C. J. and SIMPSON and DENSON, JJ., concur in the conclusion reached in this case without committing themselves to all that is said in the opinion.