# Western Union Telegraph Company v. Perry.

*Damages for Delay in Delivery of Telegram.*

(Decided Nov. 14, 1911. 56 South. 824.)

1. *Trial; Evidence; Question for Court.*—Where the facts are such that all reasonable conclusions to be drawn therefrom are the same, the question is one for the court.

2. *Telegraphs and Telephones; Regulation; Reasonable Rules.*—A telegraph company may prescribe reasonable regulations as to the hours during which it will do business with a view of the character of the business done and the locality of the office, and hence, may maintain an office in a village of three hundred inhabitants for the receipt and delivery of messages only from seven A. M., to seven P. M. each day.

3. *Same; Delivery of Messages; Obligation Incurred.*—Where an agent of a telegraph company receives a message for transmission, having no knowledge of the office hours of the terminal office and not being chargeable with notice thereof, the mere receiving of the message did not amount to a waiver of the company's right to show its office hours at the terminal office.

4. *Same.*—Where an agent of a telegraph company upon receiving the message at night told the sender, who was acting as agent of the sendee, that she did not know whether the terminal office was a night office or not, but would try to get the message through, and under reasonable regulations of the company the terminal office was not a night office, the delay in the delivery of the message did not render the company liable.

APPEAL from Walker Circuit Court.

Heard before Hon. JAMES J. RAY.

Action of F. B. Perry against the Western Union Telegraph Company, for damages for delay in delivery of telegram. Judgment for plaintiff and defendant appeals. Reversed and remanded.

GEORGE H. FEARONS, CAMPBELL & JOHNSTON, and W. C. DAVIS, for appellant. Counsel discuss the assignments of error relative to evidence, and insist that a witness may not testify to his uncommunicated motive or intention.—*Richardson v. Stringfellow,* 100 Ala. 416; *Tyson v. Hieronymus,* 127 Ala. 489; *Burke v. Bragg,* 89 Ala. 201. The defendant had a right to make reasonable rules and regulations, and the rule and regulations as to office hours in this case was reasonable. —*W. U. T. Co. v. Hill,* 50 South. 40 Am. St. Rep. 847; 103 Ind. 505; 24 Fed. 119. Counsel insist on the other assignments of error, but without citation of authority.

BANKHEAD & BANKHEAD, for appellee. The court did not err relative to the evidence.—*W. U. T. Co. v. Benson,* 48 South. 712; *Same v. Haley,* 143, Ala. 593. Counsel discuss charges given and refused, but without citation of authority.

[Western Union Telegraph Company v. Perry.]

DE GRAFFENRIED, J.—This was an action,    in form ex contractu, brought by appellee against appellant for damages caused by delay in delivering a telegram. The appellee lived at Parrish, a town of 300 inhabitants, in Walker county, Ala. He had a brother who was desperately sick in Montgomery, Ala., and arranged· with one Robertson, who was attending him, if the brother became too sick to live, or died, to wire him at Parrish, Ala., in order that he might be with him during his last hours, or at least be present at his funeral. The brother died about 8 o'clock on the night of March 12th and about 9 o'clock that night Robertson delivered to the appellee at its office in the city of Montgomery, on a day blank, the following telegram for transmission to appellee at Parrish: "F. B. Perry, Parrish, Alabama. Capt. S. J. Perry died eight o'clock tonight. Telegraph me at once what to do. (Signed) Robertson."

Miss Hicks was the receiving clerk of appellant at the Montgomery office when the telegram was delivered by Robertson to appellant for transmission to Parrish, and the delivery of the telegram to the company was made to her as appellant's agent. On this subject, Robertson testified as follows: "My recollection is that the lady told me that she did not know whether there was a night office at Parrish or not; that she would do the best she could, and I told her that Mr. Perry lived near there. She said she would get it off if she could; that she would send it if there was one there." On being recalled as a witness at a later stage of the case, the witness Robertson speaking of this same subject said: "I understood her to say that she did not know positive whether it was a night office; that she would try to get it through. I could not repeat the conversation; that was my impression.

She gave me to understand that there was some doubt of it being a night office; she didn't say she did not know. She said she didn't know."

Parrish was not in direct communication with the Montgomery office. Messages from Montgomery to Parrish were transmitted to Birmingham, where there was a relay office, and from that point transmitted to Parrish. Miss Hicks, in the above conversation, when the massage was delivered by Robertson to appellant, frankly told him that she did not know whether Parrish was a night office or not, and for that reason she could not say whether it could be delivered that night or not. It was a death message, and she naturally agreed to do the best she could to get it to the sendee that night, in order that he might inform Robertson what to do and also have the opportunity of attending the funeral. No other reasonable construction can be placed upon the above extracts taken from Robertson's testimony, and the truth of the matter is apparent.

Parrish was not a night office for the delivery of telegrams. From 7 p. m. to 7 a. m., the appellant had no agent there to deliver telegrams. It was an office in which the railroad company kept one man at night, who was a telegraph operator, and whose duties were to look after the trains and business of the railroad company. During the night, if a Western Union message came to Parrish, he took it from the wire and laid it aside, and kept it until the agent of appellant came on duty at 7 a. m. Appellant's agent then had such message delivered. The agent of the railroad company at Parrish, whose duties kept him in the office from 7 p. m. to 7 a. m., owed the appellant no duty to deliver any message received at that office after 7 p. m. No person was connected with appellant at Parrish whose duty it was to deliver messages between 7 p. m. and 7

a. m. It appears from the evidence that the message sent by Robertson was received by the railroad operator at Parrish—prior to 11 p. m., and that he took it from the wires, and that it was kept in the office until 7 a. m., and that it was then delivered with reasonable promptness to appellee by that agent of appellant whose duty required him to deliver messages.

The real fact is that the Western Union Telegraph Company had no agent separate and distinct from the railroad agent at Parrish. There was an agreement between the railroad company and the Western Union Telegraph Company that the telegraph operator of the railroad company would receive and deliver messages from the Western Union Telegraph Company at Parrish from 7 a. m. to 7 p. m., and that its telegraph operator would receive messages from 7 p. m. to 7 a. m., but not deliver them. The messages received between 7 p. m. and 7 a. m., were to be held in the office until 7 a. m., when they were to be delivered in the usual course of business for the Western Union Telegraph Company. The railroad company kept only one man in its office at night, and that man, as above stated, owed the telegraph company no duty whatever to deliver a message between 7 p. m. and 7 a. m.

The above facts were shown by appellee's evidence, and the evidence of appellant on that subject was merely cumulative. There was no disppute on that subject, and no evidence in the case from which a contrary conclusion could have been drawn by a reasonable man.

When the facts are such that all reasonable conclusions to be drawn from them are the same, they present a mere question of law for the court.—*Southern Ry. Co. v. Burgess,* 143 Ala. 364, 42 South. 35; *Truluck v. Wiley* (C. C. A.) 187 Fed. 956; *Railway v. Iives,*

144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; *Railroad v. Converse,* 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; *Birmingham R., L. & P. Co. v. Murphy,* 2 Ala. App. 588, 56 South. 817.

Telegraph companies have a right to provide reasonable regulations as to hours during which it will do business, and the reasonableness of the regulations will depend largely upon the character of the business done, the locality of the office, and is often a mixed question of law and fact.—*Western Union Telegraph Co. v. Hill,* 163 Ala. 18, 50 South. 248, 23 L. R. A. (N. S.) 648.

If the telegraph agent receiving a telegram has no knowledge of the office hours of the office to which the message is to be sent, and is not chargeable with notice or knowledge thereof, the mere receiving of the message will not amount to a waiver of the rights of the company to show its office hours at the office to which the message was to be sent.—*Western Union Telegraph Co. v. Hill, supra.*

In the present case, Miss Hicks, who received the telegram, expressly told the agent of the appellee that she did not know whether Parrish was a night office or not, and, as the message was delivered to her during the night, and as Parrish was not a night office for the delivery of messages, she did all in the premises, under the facts as shown in the record, that the law required her to do.

There can be no question about the fact that under the evidence in this case the appellant had a right to maintain an office at Parrish, which was a village of only 300 inhabitants, for the delivery of messages from 7 a. m. to 7 p. m., and for only that period, during each day.—*Western Union Telegraph Co. v. Hill, supra.* We are therefore of the opinion that the appel-

lant was entitled to the affirmative charge, which it requested the court in writing to give to the jury in this case.

Reversed and remanded.