[Western Union Telegraph Co. v. Hicks.]

# Western Union Telegraph Co. *v.* Hicks.

## Delay in Delivery of Death Message.

(Decided June 1, 1916.   Rehearing denied June 30, 1916.
72 South. 356.)

1. **Telegraphs and Telephones; Delay in Delivery.**—Where the agent of a telegraph company received a message for transmission and delivery to a place where the company had no office, or to which it could not make prompt delivery of message requiring prompt delivery, the company is liable for the failure to promptly deliver any such message, as it is within the apparent scope of the authority of the agent receiving a message for transmission to know what places messages are, and can be, sent by the company.

2. **Sunday; Contracts; Death Message.**—A contract between telegraph companies and the sender of a message, announcing the death of sendee's mother, is not void under the Sunday statute.

3. **Telegraphs and Telephones; Delivery; Contract.**—Where the complaint alleged that the contract was to "transmit the message" and the breach alleged was "a failure to deliver" such complaint was not rendered insufficient as the word "transmit" as used therein included the obligation to deliver.

4. **Principal and Agent; Undisclosed Principal.**—An undisclosed principal may sue on a contract made by his agent.

5. **Telegraphs and Telephones; Delay in Delivery; Damages; Mental Anguish.**—Where the right to recover anything else exists, a recovery may be had for mental anguish for a failure to promptly transmit and deliver a death message.

6. **Same; Notice.**—Where the telegram read "Your mother is dead, come at once," it was, on its face, notice to the telegraph company of its importance, and that prompt delivery was desirable, and was necessary to enable the sendee to be present at the burial.

7. **Same; Negligence.**—Where the agent who received the telegram for transmission announcing the death of the sendee's mother, it showing on its face the demand for speedy transmission and delivery, knew that the telephone exchange at the town of destination, there being no telegraph office there, was closed on Sunday, the day of the probable receipt of the message, and received the message without notifying the sender of these facts, his failure to so notify the sender was actionable negligence.

8. **Same; Pleading.**—Where the action was against the telegraph company for damages for failure to promptly transmit a death message, it was proper for defendant to aver in his pleas, a matter peculiarly within the knowledge of defendant, the fact that the agent who received the message for transmission had no knowldge at the time he received the message, that the telephone exchange in the town of the sendee's address, there being no telegraph office there, was closed on Sunday, the day of the probable receipt of the message.

**9. Same; Jury Question.**—Whether defendant's plea setting up that its receiving agent did not know that the telephone exchange at the town of destination was closed on Sunday, the day of probable receipt of the message, was proven, was a question for the jury under the evidence in this case.

**10. Same; Sendee; Right of Recovery.**—To entitle the sendee of a delayed death message to a recovery therefor, it is not necessary that the sender should have been acting solely for the sendee's benefit, and not at all for himself, and that he must have intended to so act.

APPEAL from Bessemer City Court.

Heard before Hon. J. C. B. GWIN.

Action by George Hicks against the Western Union Telegraph Company, for damages for delay in the delivery of a death message. Judgment for plaintiff and defendant appeals. Affirmed.

FORNEY JOHNSTON, and W. R. C. COCKE, for appellant. GOODWYN & ROSS, for appellee.

MAYFIELD, J.—This action is to recover damages for delay in the delivery of a telegram which announced the death of plaintiff's mother and summoned him to her burial. The message was to be sent from Whitwell, Tenn., to Adger, Ala. It seems that defendant had no office or telegraph instruments at either Whitwell or Adger. The message was sent from Whitwell to Chattanooga, Tenn., by phone, and from Chattanooga to Birmingham, Ala., by telegraph, and from Birmingham to Adger by phone. The main defense offered for the delay in delivery was the fact that defendant had no office at Adger, and that the phone office or station, at Adger, used by defendant for the reception and delivery of messages to be sent from that point, and of messages to be delivered there, as was the message in this case, was not kept open on Sundays; it being Sunday when the message in question should have been delivered at Adger. There appears to have been no delay until the message reached the defendant's Birmingham office, and the excuse for the delay there was that stated above. The facts that defendant had no telegraph office at Adger, and that is did not control the phone, and therefore could not promptly deliver the message—the day of delivery being Sunday—constitute the basis of the chief defense; it being conceded that the message did not reach Adger until the morning following the Sunday on which it should otherwise have been delivered. Was this a defense, applied to the issues and the facts in this case?

[Western Union Telegraph Co. v. Hicks.]

(1) It is within the apparent scope of the authority of an agent of the telegraph company, receiving a mesage for transmission, to know to what places message are, and can be, sent by the company; and if an agent receives a message for transmission and delivery to a place at which the company has no office, or at which it cannot make prompt delivery of messages requiring prompt delivery according to the contract, the telegraph company is liable for the failure to promptly deliver any such message.—Joyce on Elec. Law, § 763.

The telephone is at present much used by the public and by telegraph companies in sending and delivering telegraphic messages. The prime purpose of such messages is speed and quickness in the transmission and delivery thereof; and to this end, telephones at the termini of telegraph lines, for the purpose of both forwarding and receiving telegrams, are much used, because they facilitate the business and aid in the quick transmission of message from sender to sendee—the great object to be attained in telegraphy.—Joyce on Elec. Law, § 740a.

(2) Contracts to send messages like the one in question are not void under our Sunday statutes; the death and burial of one's father or mother involves such moral necessity for one's presence as to bring such contracts to send and deliver messages like the one in question clearly within the exception of the statute.— W. U. T. Co. v. Wilson, 93 Ala. 32, 9 South. 414, 30 Am. St. Rep. 23.

(3) The complaint contained four counts. Counts 1 and 3 were ex contractu, while counts 2 and 4 were ex delictò. The only difference between counts 1 and 3 was that 1 alleged the delivery of the message for transmission to the defendant at Whitwell, while 3 alleged the delivery at Chattanooga. These counts were each sufficient, and not subject to demurrer; they practically followed forms often approved and held sufficient by this court.—W. U. T. Co. v. Northcutt, 158 Ala. 539, 48 South. 553, 132 Am. St. Rep. 38. The counts sufficiently alleged a contract between the parties, and a breach thereof, in failure to deliver within a reasonable time. The point is entirely too technical to be considered, that the contract was to "transmit," whereas the breach alleged was a failure to "deliver." Construing the counts as a whole, it is perfectly evident that the transmission alleged included a "delivery," in the sense in which these averments are used in referring to sending messages by telegraph

companies. While there is, literally speaking, a vast difference between transmitting and delivering, yet it is perfectly clear that to "transmit,' as used in these counts, included the obligation to deliver. The allegation is, "to transmit to the plaintiff at Adger, Ala." The message could not be transmitted "to plaintiff at Adger," without a delivery or its legal equivalent. If the allegation were, "to transmit to Adger," and not to plaintiff, there would be force in the contention.

While counts 2 and 4 do not allege in terms that plaintiff or his agent paid money to defendant when it undertook to send the message, they do allege that he paid money for the delivery of the message.

(4, 5) The counts each allege that the sender was the agent of plaintiff in sending the message and paying the charges, and the evidence abundantly supports this allegation. The following propositions are well settled in this state:

First. An undisclosed principal may sue on a contract made by an agent.—*W. U. T. Co. v. Millsap,* 135 Ala. 415, 33 South. 160, and cases cited; *Manaker v. W. U. T. Co.,* 137 Ala. 292, 34 South. 839; *W. U. T. Co. v. Manker,* 145 Ala. 418, 41 South. 850.

Second. Where there is a right of recovery of anything else on the contract, a recovery may be had in addition for mental anguish.—*W. U. T. Co. v. Krichbaum,* 132 Ala. 535, 31 South. 607; *W. U. T. Co. v. Henderson,* 89 Ala. 510, 518, 519, 7 South| 419, 18 Am. St. Rep. 148; *W. U. T. Co. v. Northcutt,* 158 Ala. 557, 48 South. 553, 132 Am. St. Rep. 38.

(6) The telegram in question on its face disclosed plaintiff's interest and rights in the contract made. It was therefore on its face notice to defendant of its importance, and of prompt delivery being desirable and necessary to enable plaintiff to be present at the burial of his mother. The message was set out in the pleadings, and was as follows:

85 ANDC                                        Whitwell Tenn 7-27th-13
Mr Geo Hicks
        Adger Ala.
Your mother is dead come at once

Joe Hicks
1147 AM.

There was no possible error or injury in overruling the demurrers to the complaint.

(7, 8) To the complaint the defendant filed several special pleas. A demurrer was sustained as to plea 2, but overruled as to plea 4. The only difference between these two pleas was that plea 4 alleged that defendant's agent who received the message for transmission had no knowledge, at the time she received the message, that the telephone exchange at Adger was closed on Sunday. This was evidently added to plea 4, to conform to the ruling of the court on demurrer to plea 2. This averment we hold to be both proper and necessary for either of these two pleas, in order to state a good defense to the action. If this agent knew the fact, and then received the message with the knowledge that it could not be delivered on Sunday, without notifying the sender, then that failure to notify would be actionable negligence. Whether she did have such knowledge, or could or should have obtained it, was matter peculiarly within the knowledge of defendant, and hence it should have been averred by defendant in its plea.

Receiving such a message for transmission, showing on its face, as it did, the demand for speedy action, it was the duty of the agent to inform the sender that it could not be delivered on Sunday, if she had such knowledge; and her want of such knowledge was, at best for the defendant, only an excuse for accepting and agreeing to transmit with reasonable speed, and surely if it could not be transmitted or delivered on the day it was sent its delivery could not be said to be within a reasonable time. Such has been the repeated holding of this court, and we think it sound.

The Court of Appeals has made a specific ruling as to a plea very similar to the one in question, and in a case very similar, which decision is well stated in a headnote as follows: "A plea alleged that A., the place of delivery of a message was a small town with office hours from 7 a. m. to 5 p. m.; that the message was given defendant at L. after 5 o'clock and was received by the office at A. at 9 o'clock of the next morning, when it was promptly carried to the place of business of the sendee, and on ascertaining that he had left A. the sender was promptly so informed. Held, demurrable as not showing that the receiving agent did not know the office hours at A. and not showing prompt transmission the following day."—*W. U. T. Co. v. Sledge*, 7 Ala. App. 650, 62 South. 390.

The Court of Appeals in that case cited and followed two of our own decisions, each of which announces principles of law which support the holding of the Court of Appeals. See *Hill's Case,* 163 Ala. 18, 50 South. 248, 23 L. R. A. (N. S.) 648, 19 Ann. Cas. 1058, and *Cleveland's Case,* 169 Ala. 131, 53 South. 80, Ann. Cas. 1012B, 534. These cases hold that the receipt of a message like the one in question, for transmission after office hours, will constitute a waiver of the rules governing the defendant's hours of doing business. If the agent should inform the sender of the office hours and the latter should insist upon sending the message notwithstanding the office hours, a different question would, of course, be presented.

(9) This plea raised an important, if not the main, issue in the case. Issue being joined on it, if it was proven, then, of course, defendant was entitled to a verdict. Whether or not it was proven, however, was a question for the jury, and they found against the defendant. The evidence was not without dispute, and it was open for the jury to infer from other facts proven that the agent of the defendant, receiving the message, did or did not know of the office hours at Adger, the destination of the message.

Defendant's agent testified, in part, as follows: "I simply received the message over the phone and turned it over to the operators, and they sent the message. We had in our office there the guidebooks of the Western Union, showing where the Western Union Telegraph Company has offices. I looked in this guidebook to see whether or not I could send this message to Adger. I found that we could send the message; that we had a phone there; found that we had an office there. No sir, I did not notify Mr. Hicks that there was any doubt of being able to get the message there. No, sir; I did not tell Mr. Hicks that I could get the message off right away; he did not ask me. Well, I just taken the message and asked what the telephone number was there, and he said 37, and he told me the message, and I said, 'Who is sending the message?' and he said, 'J. Hicks.' I looked at the book afterwards, before I sent the message. The book just showed we had an office at Adger. I didn't know it was a regular office. I thought it was, yes, sir, an exchange. No, sir; there were no marks on the book to show it was a regular office, an exchange, or a Sunday office; it showed we had an office at Adger. I did not find out that the office at Adger was closed."

[Western Union Telegraph Co. v. Hicks.]

Joe Hicks, who sent the message as agent for plaintiff, testified, in part, as follows: "I had a conversation with the company's agent at the time I delivered this message over the telephone at Whitwell. They asked me who it was, and I told them who it was, Joe Hicks, and I told them I wanted to send a telegram to George Hicks at Adger, Ala., come at once that his mother was dead. They asked me where I was, and I said I was on top of the mountain at Higgin's. They also asked me the telephone number and where I was. I told them number 30 something; I don't remember. I asked them if they could get the message off just as quick as they could, they said they would. I don't think there was anything else said; I don't remember now."

(10) If the defendant's agent receiving and sending this message knew that the office of delivery was not open on Sunday, they should have so informed Joe Hicks, and not have misled him into the belief that it would be sent and delivered without delay. For these reasons most of the defendant's twelve requested charges were properly refused. Some of the charges requested the court to instruct the jury that, in order for plaintiff to recover under some of the counts, it was necessary that Joe Hicks, the sender, should have been acting solely for the benefit of plaintiff, and not at all for himself, and that he must have intended so to act. This is not the law, and such charges possessed the tendency to mislead. While it was necessary that he act as the agent of plaintiff, in sending the message in order to recover under the first and third counts, the qualifications and restrictions placed upon the agency by the charges are not correct.

There are a number of exceptions as to rulings on the admission and the rejection of evidence. They have each been carefully examined, and all are found to be without merit.

There is no new question involved in any of the assignments, and no good can come of a discussion of the questions. We feel sure that there was no reversible error as to any of such rulings.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.