151 So.2d 767

Joe Floyd BROYLES et al.

v.

BROWN ENGINEERING CO., Inc.

8 Div. 69.

Supreme Court of Alabama.

April 4, 1963.

36

Lanier, Price, Shaver & Lanier, Huntsville, for appellee.

John R. Thomas, Jr., and Glenn F. Manning, Huntsville, for appellants.

PER CURIAM.

Appellants, plaintiffs below, appeal from a judgment of involuntary nonsuit after an adverse ruling of the court in sustaining demurrers of appellee, defendant below, to

the several counts of the complaint, two of which were amended.

The complaint consists of Counts 1, 2, 3, 4, and 5 (Counts 1 and 4 were amended), all of which have the same objective, worded differently, but essentially based on the statutory form for breach of warranty. Each count is elaborately phrased.

The objective of each count is to recover damages for violation of a contract between plaintiffs and defendant whereby the latter, an incorporated group of civil engineers, agreed to render civil engineering services and submit plans and specifications to plaintiffs for drainage of a proposed subdivision to be used as a housing project near Huntsville, Alabama.

Counts 1 and 2 allege that the agreement between the parties was partially expressed and partially implied, while the other three counts charge a violation of an agreement that was implied.

The contention of the plaintiffs in each count, briefly stated, is that the defendant, being informed of the nature of the project and the need of civil engineering services to define and draw plans and specifications for adequate drainage of a tract of land to be developed, accepted employment for the rendition of such engineering services. The complaint further charges that the drainage areas depicted on the plans submitted by the defendant were incorrect and did not show adequate storm drainage easements where necessary; that the drainage plans were inadequate for the purpose for which they were to be used; and that the drainage of the subdivision, due to the incorrectness of the plans and specifications submitted by defendant pursuant to its employment by plaintiffs, was (and is) subject to periodic floodings.

A demurrer to each count of the complaint presented to the trial court, and now to this court, the question of an implied warranty vel non on the part of defendant that the plans and specifications, the product of the alleged employment, were sufficient and adequate for the purposes they were intended as alleged in the complaint and briefly set out above.

The defendant contends that in the absence of an express contract, there is no liability for the alleged insufficiency or inadequacy of the plans except as may be attributable to its negligence or its failure to use reasonable skill and diligence in their preparation. Neither negligence nor the want of reasonable skill and diligence in the preparation of the plans was charged in the complaint. A breach of implied warranty of adequate results is the gravamen of each count. Plaintiffs take the position that an implied warranty exists and it casts upon the defendant the obligation of a guarantor or insurer of the plans for the purpose in view and of which defendant had knowledge when it accepted employment.

The difference between an expressed and an implied contract is merely in the mode of proof, the elements being the same, and where mutual agreement is contradicted by the statements of either party at the time, there being no expressed agreement, there can be no implication of contractual undertaking by that party. American Mutual Liability Ins. Co. v. McDiarmid, 211 Ala. 127, 99 So. 849.

In 17 C.J.S. Contracts § 4, page 320, the questions of what facts will establish a true implied contract are considered from the general authorities, and are to the effect that a contract implied in fact is a true contract, the agreement of the parties being inferred from the circumstances, showing a mutual intention to so contract. Such implication does not arise contrary to law or the expressed declaration of the parties. Cowan v. Martin & Huckaby, 246 Ala. 378, 20 So.2d 769.

Whatever is necessarily implied in a contract is as much a part thereof is if expressly stated therein. 12 Amer.Jur., Contracts, § 239, page 765.

■ An action for breach of duty arising out of a contract of employment, express or implied, to accomplish a particular result, is based on failure to perform the special agreement regardless of negligence. 70 C.J.S. Physicians and Surgeons § 38, page 943; Colvin v. Smith, 276 App.Div. 9, 92 N.Y.S.2d 794; Lakeman v. La France, 102 N.H. 300, 156 A.2d 123; Russell & Co. v. Polk County Abstract Co., 87 Iowa 233, 54 N.W. 212, 43 Am.St.Rep. 381; 28 A.L.R. 2d 900.

■ A warranty of work may exist, however, if the parties so intended, without the use of any particular words in the contract. 12 Amer.Jur., Contracts, § 259, page 806. Van Buskirk v. Murden, 22 Ill. 446, 74 Am.Dec. 163.

■ An implied contract arises where there are circumstances which, according to the ordinary course of dealing and common understanding, show a mutual intent to contract. Such a contract must contain all the elements of an express contract, which rests on consent, and is to every intent and purpose an agreement between the parties, and it cannot be found to exist unless a contract status is shown. Gilbert v. Gwin-McCollum Funeral Home, Inc., 268 Ala. 372, 102 So. 2d 646

■ A contract may be pleaded by stating its substance and legal effect, or in haec verba, and all material elements should be stated with certainty to a common intent. Gilbert v. Gwin-McCollum Funeral Home, Inc., supra; Evans v. Town of Muscle Shoals, 235 Ala. 325, 179 So. 228.

■ We are of the opinion that, according to the allegations of the complaint, which on demurrer are admitted as true for the purpose of pleading, the defendant impliedly warranted the sufficiency and adequacy of the plans and specifications to reasonably accomplish the purpose for which they were intended as alleged in the several counts of the complaint. We are further of the opinion that an express warranty was not necessary to charge the defendant with

becoming an insurer or guarantor that such plans and specifications would reasonably accomplish the purposes in view.

The complaint alleges knowledge on the part of the defendant that plaintiffs intended to subdivide the tract of land and convert the same to the erection of dwellings thereon, entailing an expensive outlay of money. The defendant professed to be expert or held itself out to be, and certainly was charged with notice that correct and adequate plans and specifications were essential for adequate drainage of rain water from the area of land to be converted. Common understanding and the ordinary course of dealing would speak up and justify a reasonable conclusion, as we view all the circumstances and the nature of the contract, that the parties mutually intended an agreement of guaranty as to the sufficiency and adequacy of the plans and specifications to accomplish proper and adequate drainage. To hold otherwise would be to ignore practical and common sense implications that arise from contractual dealings and negotiations as here presented in the complaint.

■ We recognize that in the absence of an express contract, the courts are reluctant to construe contractual dealings and services of lawyers, physicians and architects, and probably some other professions, as implying a contract of guaranty or insurance of favorable results. And under some circumstances civil engineers will not be held to have impliedly warranted or insured favorable or certain results. It all depends on the nature of the employment and the particular services to be rendered.

■ The practice of medicine, and related professional services, depends on factors beyond the control of the practitioner. The medicines prescribed are usually the products of experiments by scientists or are compounded by other agencies. The same medicine may have beneficial and favorable results on one patient and unfavorable reaction on another. An example is penicillin. One patient reacts favorably and another unfavorably. The chemistry of human

bodies varies. Some patients respond to surgery while other patients within the same age bracket respond unfavorably. The response is not yet within human control. The practice of medicine being to a great degree experimental, it cannot be said as a matter of common dealing and common sense, that a physician intended, in the absence of express words, to insure favorable results or a cure.

■ Lawyers, in the practice of their profession, are dependent on the legal pronouncements of judicial agencies of government. Interpretation of law is and cannot be an exact and accurate science. There is generally no formula to follow. Even when Code forms are used in the drafting of a complaint, questions often arise as to whether or not the correct form for the client's case has been used. The courts from state to state, and among the judges on a particular court, often disagree in their interpretation as to the effect of judicial pronouncements or legislative enactments. Trial lawyers are dependent on the reactions of jurors to factual presentations and the application of law thereto. It is possible that an implied warranty of results by an attorney could exist. Without committing ourselves, a court might hold that an attorney who is entrusted with drawing a will and its proper execution impliedly insures its proper execution by sufficient number of witnesses signing their names as such—a very simple mandate of law that requires no room for divisional interpretation. But as a whole, lawyers are dealing with factors that are beyond their control and under such circumstances, common dealings would reasonably suggest the absence of any implied guaranty of results.

■ Architects must have as a part of their competency a keen aesthetic sense to enable them to design structures of beauty and dignity; they must have a technical knowledge of many structural factors which lend strength and stability to their designs. The materials they recommend for use are produced by agencies beyond the control and influence of the architect. His work is to a certain degree experimental or depends on the experiments and on production of materials by others. Then, too, the law of physics, gravity and the rotation of the earth, must, in many projects, be taken into account. The texture of the soil for a foundation, a factor beyond his control, must be considered. For these reasons and others which we will not undertake to enumerate, our courts have not held architects to a strict accountability of guaranty. Here again common dealing reasonably suggests the absence of any implied agreement of insurability.

If a civil engineer is employed to locate a government land line between tracts or areas, we submit that he would not impliedly insure location of the correct line. In determining this location, it is commonly known that he is dependent on obtaining a correct starting point for his survey—a point that is often obscured or is evidenced by misleading or false marks—marks that are made by someone else. An engineer under such circumstances cannot ordinarily be expected to guarantee or insure definite and positive results.

While the cases we cite below are not exactly in point, we find that in Montrose Contracting Company v. County of Westchester, 2 Cir., 80 F.2d 841 (cert. denied, 298 U.S. 662, 56 S.Ct. 746, 80 L.Ed. 1387); also in United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166; likewise in Penn Bridge Company v. City of New Orleans, 5 Cir., 222 F. 737; see also McKnight Flintic Stone Co. v. Mayor of New York, 160 N.Y. 72, 54 N.E. 661, it was held in principle that where one party furnishes plans and specifications for a contractor to follow in a construction job, he thereby impliedly warrants their sufficiency for the purpose in view.

■ These decisions, in their pronouncement of this rule recognize the presence and fairness of an implied warranty connected with the rendition of occupational services; also, they illustrate that im-

plied warranties of fitness for the purposes in view are not necessarily confined to executed contracts for the sale of commercial products and tangibles. They also illustrate the rule that implied agreements arise out of justice and fair dealing between contracting parties, consistent, of course, with the provisions of the express contract.

It also appears that the courts have extended the law almost to its full length in holding that abstractors are free from an implied agreement of guaranty in the preparation of abstracts, particularly where the service consists only in searching records for instruments affecting title. This service often consists only in a routine search that does not involve unknown or uncontrollable factors. This extension should not justify further restriction of the implied rule of guaranty and assurance of results where justice and fairness between the parties call for its application or intervention.

It is our opinion that an engineering survey of drainage requirements of a tract of land to be developed as a subdivision on which dwellings are to be erected, as here presented, is not entailed with unknown or uncontrollable topographical or landscape conditions as would prevent a drainage survey, if properly made with reasonable skill and diligence by a qualified civil engineer, from being reasonably accurate by the proper use of instruments and known formulas *accepted and used by the civil engineering* profession. Certainly a contracting party has a right to expect the survey to be done with reasonable accuracy chargeable to the profession, and should not be dependent in his effort to recover damages on an allegation of negligence or unskillful and imprudent work. Such allegations cast on him a difficult burden of proof. A contracting civil engineer employed to survey and submit plans and specifications for drainage of an area of land as here involved, when he accepts employment, being competent and qualified as he holds himself out to be, should expect to be charged with a guaranty of reasonable results, and we think that in his dealings and in common fairness

he does so expect. Resistance as here to accountability does not dissipate the fairness and justice of such an implication.

We have examined the several grounds of demurrer, including, of course, the several grounds that present the issue of an implied warranty herein discussed, and we conclude that none of these grounds have merit. It is our opinion that the trial court, in its judgment sustaining the demurrers addressed to the five counts of the complaint, was in error, and that the judgment so entered should be and it is reversed and the cause is remanded for further proceedings.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by the court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and COLEMAN, J., concur.

GOODWYN and MERRILL, JJ., concur in result.