**20TH CENTURY MARKETING, INC. and Domer L. Ishler, Plaintiffs-Appellants,**

v.

**AVCO CORPORATION, Defendant-Appellee.**

No. 75–4225.

United States Court of Appeals, Fifth Circuit.

March 9, 1978.

---

Ralph W. Hornsby, C. Lynwood Smith, Jr., Huntsville, Ala., for plaintiffs-appellants.

Steve A. Baccus, W. J. McDaniel, Birmingham, Ala., for defendant-appellee.

Before MORGAN, HILL and FAY, Circuit Judges.

JAMES C. HILL, Circuit Judge:

The case on appeal is a contract action tried before the district court sitting without a jury. The only issue for review is whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. After carefully reviewing the record, we affirm the district court's decision in all aspects but one. The district court judge may have considered an improper factor in determining the amount of the plaintiffs-appellants' recovery. Therefore, we must remand this suit to the district court.

The parties dispute several of the significant facts in the case on appeal. We state and apply the law to the facts as found by the district court, because the district court's findings of fact are supported in the record. *Baggett v. Richardson*, 473 F.2d 863 (5th Cir. 1973); Fed.R.Civ.P. 52(a). The plaintiffs-appellants in the case on appeal are 20th Century Marketing, Inc. (20th Century), an Alabama corporation with its principal place of business in Huntsville, Alabama, and Mr. Domer Ishler, Vice-President of 20th Century. The defendant-appellee is Avco Corp., a highly diversified Delaware corporation. The present litigation concerns only Avco's Huntsville division (hereinafter referred to as Avco), which is primarily an original equipment manufacturer (OEM) in the electronics industry. 20th Century is a manufacturer's representative for various electronic components manufac-

turers. As a manufacturer's representative, 20th Century sells its clients' products to manufacturers in the electronics industry.

Before commencement of this suit, appellant Ishler periodically called on Avco to sell the components manufactured by 20th Century's clients. On these calls, Ishler frequently dealt with Mr. James Moore, the head of Avco's purchasing department. On May 7, 1973, Moore visited Ishler at 20th Century's office. Moore explained Avco's finder's fee program to Ishler, though a written statement of the program was not available for general distribution until May 14, 1973. The stated purpose for the finder's fee program was "to encourage specific independent sales agents to be on the lookout for OEM opportunities [for Avco] while in the pursuit of their regular business." Under the program, Avco agreed to pay a finder of new business a fee based on the first contract signed with the new customer. The amount of the fee was "left to the sole discretion of Avco" and was dependent on the "nature, competitiveness and risk" of the particular contract. The program stated that the fee would be in an amount "up to 5%" of the first contract. On May 8 or 9, Ishler picked up several copies of Avco's capabilities brochure at the Avco plant. On May 17, Carl Bruno, an agent of one of 20th Century's clients, told Ishler about a company that might be interested in Avco's manufacturing capabilities. The company was Control Networks Corp. (CNC), a Chicago company that needed a manufacturer with a large production capability and a strong financial structure. Bruno and Ishler inspected the Avco plant with Moore that day. The next day, Ishler told Moore that Bruno had been impressed with the plant and that Bruno was going to meet with the president of CNC concerning Avco that day. Bruno did meet with the president of CNC that day in Chicago.

In a three-way telephone conversation on May 21, Ishler told Mr. Steve Moxley, the general manager of Avco, and Moore the name of the president of CNC. Ishler told Moxley and Moore that he was going to Chicago to meet with the president of CNC

about Avco. Moxley and Moore told Ishler that the trip was unnecessary to satisfy the requirements of the finder's fee program. Ishler asked for a 6.5% commission on any contract between Avco and CNC. Moxley refused Ishler's request and again explained Avco's finder's fee program. Ishler picked up three copies of the program from the Avco plant the next day.

When Ishler went to Chicago on May 30, Bruno and he met with the president of CNC. They discussed Avco's capabilities, as well as those of R & D, Inc., a small Huntsville company involved in the electronics industry. Ishler and the president of 20th Century owned 20% of R & D, and they were on its board of directors.

On June 1, Ishler and the president of 20th Century met with Moxley and Moore at Avco. Ishler showed Moxley and Moore samples of the items CNC was interested in having manufactured, though Ishler did not show them the drawings of the samples. Ishler would not permit the Avco processing engineer to examine the samples unless Avco would agree to pay a 5% commission on all future contracts between Avco and CNC. When Moxley refused Ishler's demand and restated Avco's finder's fee program, Ishler and the president of 20th Century took the CNC samples and left the meeting. On June 5, Moxley wrote to Ishler, restating his position. On June 7, before Ishler responded to the letter, Moxley called the president of CNC and introduced himself. As a result of this conversation, the president of CNC visited the Avco plant on June 15, and on July 6, CNC and Avco entered into a production agreement with a stated face value of $13,683,880.

On July 23, Ishler finally responded to Moxley's letter of June 5. In his letter, Ishler repeated 20th Century's demand for a 5% finder's fee. Ishler did not know at this time that Avco and CNC had already signed a contract. Moxley and Ishler met on August 6, and Moxley •offered Ishler $10,000 as a finder's fee. Ishler rejected this offer on September 11 and commenced the present action on December 13, 1973.

The appellants alleged in their complaint that the appellee contracted to pay them finder's fees in an amount equal to 5% of the total value of any OEM contract obtained for the appellee by the appellants' efforts. The appellants claim, therefore, that the appellee breached this contract by refusing to pay them $684,194, an amount equal to 5% of the original contract between Avco and CNC. The appellants alleged in the alternative that the parties had an implied contract and that the appellants are entitled to $684,194 under this contract also. The district court held that the parties had not entered into an express contract. The court held, however, that the appellants were entitled to recover an amount equal to the reasonable value of their services pursuant to an implied contract between the parties and pursuant to the theory of quantum meruit. The court held that the appellants did not prove the existence of a custom and usage in the electronics industry concerning the payment of finder's fees, and the court awarded the appellants $10,000 plus interest as the reasonable value of their services.

■ On this appeal, the appellants first challenge the district court's holding that the parties did not expressly contract for a 5% finder's fee. The appellants argue that this holding is contrary to the preponderance of the evidence. The applicable standard of review was stated by this court in *Chaney v. City of Galveston*, 368 F.2d 774, 776 (5th Cir. 1966):

> It is well settled that in order for a reviewing court to set aside findings of fact by a trial court sitting without a jury, it must be clearly demonstrated that such findings are without adequate evidentiary support in the record, or were induced by an erroneous view of the law, and the burden of showing that the findings are clearly erroneous is on the one attacking them. The findings of a district court are not, therefore, lightly to be set aside, for the Court of Appeals is not a trier of facts, and does not substitute its own judgment for that of the trial court.

Applying this standard, we affirm the district court holding. James Moore, the head of appellee's purchasing department, and appellant Ishler both testified concerning their conversation on May 7, when Moore first informed Ishler that Avco would pay a finder's fee for business leads. Moore's and Ishler's testimonies directly conflict concerning this conversation. Moore testified that he explained Avco's finder's fee program, including the provisions that the amount of the fee was solely within Avco's discretion and that the fee would be up to 5% of the value of the first contract. Ishler testified that Moore said Avco would pay a 5% finder's fee for all new business. The district court credited Moore's testimony, and this conclusion is supported by other evidence in the record. Giving "due regard . . . to the opportunity of the trial court to judge . . . the credibility of the witnesses," Fed.R.Civ.P. 52(a), and applying the above quoted standard of review, we are bound by this finding.

The appellants cite other meetings during which the parties allegedly contracted for the 5% finder's fee. For each meeting that the appellants cite, the district court had sufficient evidence to support its conclusion that the parties had not contracted for a 5% finder's fee. The nonexistence of an express contract between the parties is further demonstrated by certain undisputed incidents. Ishler's request for a 6.5% commission on May 21, for example, shows that the parties did not have the meeting of minds requisite for an express contract.

Although the appellants did not prove the existence of an express contract, they did prove the existence of an implied contract. *See generally Green v. Hospital Building Authority*, 294 Ala. 467, 318 So.2d 701 (1975); *Water Works and Sanitary Sewer Board v. Norman*, 282 Ala. 41, 208 So.2d 788 (1968); *Broyles v. Brown Engineering Co.*, 275 Ala. 35, 151 So.2d 767 (1963). The appellee does not dispute the existence of an implied contract. It has admitted that the appellants found the CNC business for Avco and that the appellants are entitled to

a fee under the Avco finder's fee program.[1] Therefore, the only issue remaining for review is whether the district court's award of $10,000 plus interest is clearly erroneous. *See Baggett v. Richardson*, 473 F.2d 863, 865 (5th Cir. 1973).

The parties do not dispute the proper measure of recovery is the reasonable value of the appellants' services. The parties do dispute, however, whether the district court's award was clearly erroneous. The appellants attempted to prove that a custom and usage exists in the electronics industry for original equipment manufacturers to pay manufacturer's representatives 5% finder's fees for new business. The district court's finding that no such custom and usage exists is not clearly erroneous. Witnesses who testified at trial and by deposition were uniform on only one point: transactions of the type involved in this suit are customarily conducted only on the basis of a written contract. Several witnesses testified that a written contract is necessary to define the rights and duties of the parties to the contract. This necessity indicates that no custom and usage exists in the industry concerning the amount of finder's fees. Several witnesses further testified that the amount payable as a finder's fee depends on the particular nature of the subject contract, requiring examination of factors such as the stated value of the contract and whether the manufacturer for which the business was found was likely to have discovered the business from other sources.

This court presently cannot review the reasonableness of the district court's award. The district court memorandum of decision indicates that the district court judge may have reduced the amount of its award because Mr. Ishler discussed R & D, Inc., as well as Avco, when he visited the president of CNC on May 30. This fact should not have affected the district court's determination of the reasonable value of the appellants' services. Avco's written finder's fee program expressly states that the program's purpose is to encourage independent sales agents "to be on the lookout" for new business leads for Avco while the agents are "in the pursuit of their regular business." Avco did not obligate itself in any way to persons who looked for leads for Avco unless a contract resulted from that person's efforts, and the finder's fee program was expressly nonexclusive. Furthermore, the appellee told Ishler that it was unnecessary for him to meet with the president of CNC in Chicago to qualify for the finder's fee. Now the appellee complains that in making this "unnecessary" trip Ishler discussed the capabilities of R & D, Inc. R & D was capable of handling a single function in the process of manufacturing CNC's product whereas Avco was interested in and capable of handling all the steps in the process. Finally, Avco was awarded the entire CNC contract. Therefore, if the district court did reduce the amount of the award because Ishler also discussed R & D, Inc., the court should recompute the award ignoring this fact.

AFFIRMED in part, and REMANDED in part for proceedings not inconsistent with this opinion.

---

1. The appellee strongly argues in its appellate brief that this court should affirm the district court's award of $10,000 plus interest because the award is not clearly erroneous. In the last three pages of the brief, however, the appellee argues that the appellants should be deprived of any compensation because appellant Ishler discussed R & D, Inc., as well as Avco, with the president of CNC on May 30. We deem this argument to be meritless on the facts of this case, as discussed in the part of this opinion remanding the recovery issue to the district court.