**HUGHES ASSOCIATES, INC., Plaintiff and Counterdefendant,**

v.

**PRINTED CIRCUIT CORPORATION, Defendant and Counterplaintiff.**

Civ. No. 84–HM–5287–NE.

United States District Court,
N.D. Alabama,
Northeastern Division.

Feb. 21, 1986.

John Wyly Harrison, John P. Smith, Huntsville, Ala., for plaintiff and counter-defendant.

N. Lee Cooper, Maibeth J. Porter, Maynard, Cooper, Frierson and Gale, Birmingham, Ala., for defendant and counterplaintiff.

## MEMORANDUM OF DECISION

HALTOM, District Judge.

The above entitled civil action is before the Court on cross motions for partial summary judgment. The plaintiff and counterdefendant, Hughes Associates, Inc. (Hughes), has moved to strike the defendant's answer and counterclaim because the defendant is a foreign corporation and not qualified to do business in Alabama and to declare a restrictive noncompetition clause in the contract between the parties void as a matter of law. The defendant and counterplaintiff, Printed Circuit Corporation (PCC), has moved that the laws of Massachusetts should govern this action as per a clause in the contract, that the noncompetitive clause in the contract is valid and enforceable, and that the nonqualifying foreign corporation statute does not apply to this defendant as it engages in interstate commerce. Presently there are several pending motions dealing with discovery that has taken place between the parties since the commencement of this lawsuit. The Court is of the opinion that in the interest of judicial economy it will be more expedient to resolve the issues before the Court on summary judgment first, as some discovery motions will be affected by this decision.

Hughes is a manufacturer's representative corporation domiciled in Madison County, Alabama. This line of work requires Hughes to sell products on behalf of a number of clients in a certain area. Hughes therefore acts as a middleman between a manufacturer and its buyers, earning a commission from the sales. PCC is a Massachusetts corporation engaged in the manufacture of printed circuit boards and is not qualified to do business in Alabama. Hughes and PCC entered into a contract on April 14, 1980 whereby Hughes would act as PCC's manufacturer's representative in several states including Alabama, Georgia, Mississippi, Tennessee, North Carolina, and South Carolina. From the evidence thus far submitted it appears that the major position of this business came from Alabama and Georgia.

Before the contract was executed, Charles Hughes, President of Hughes Associates, Inc. traveled to Massachusetts to discuss the possibility of a contract between Hughes and PCC. He met with Peter Sarmanian (Sarmanian), chief executive officer of PCC. Later after successful negotiations, Sarmanian forwarded a contract to Alabama for Hughes to sign. Charles Hughes apparently signed and accepted this offer at his office in Alabama, returning it through the mail. Thereafter Hughes acted as PCC's representative in the southeast until the contract was terminated in late 1983 or early 1984. The contract by its terms was due to expire on March 17, 1981; however, the parties continued performance thereunder until either late 1983 or early 1984.

After the sales representative's agreement was consummated between Hughes and PCC, Hughes procured a contract with Accutronics Corporation (Accutronics). Accutronics is also a manufacturer of printed circuit boards and Hughes agreed to act as manufacturer's representative and sell printed circuit boards on behalf of Accutronics.

PCC terminated the contract with Hughes after learning of the relationship between Hughes and Accutronics. Plaintiff Hughes has filed suit alleging that PCC has failed and refused to pay commissions due under the contract on sales made before termination of the agreement. PCC filed an answer and counterclaim denying owing commissions to Hughes and alleging that the termination of the contract was not wrongful in light of Hughes' breach of

a noncompetition clause in the contract. Moreover, PCC asserts that the withholding of commissions is justified and counterclaims against Hughes seeking damages allegedly suffered as a result of Hughes' alleged breach of the noncompetition clause. Both parties have moved for partial summary judgment in their favor.

## I. CONTINUED PERFORMANCE BEYOND THE DATE OF EXPIRATION OF THE CONTRACT.

The Court notes at the outset that although the contract by its terms was to expire on March 17, 1981 and the parties continued performance thereunder until late 1983 or shortly thereafter, the express terms of the contract will continue to govern the parties' performance beyond the expiration date. The general rule is that where parties who have entered into a contract continue their respective performance thereunder beyond the expiration date of the contract, the parties are deemed to have mutually agreed to a new implied contract encompassing the same terms. *Blalock v. Perfect Subscription Co.,* 458 F.Supp. 123, 126 (S.D.Ala.1978), quoting A. Corbin, *Contracts* § 684; W. Williston, *Contracts* § 90. Alabama decisions follow this rule, See, e.g., *Sims v. Etowah County Board of Education,* 337 So.2d 1310 (Ala. 1976); *Montgomery Water Works and Sanitary Board v. Norman,* 282 Ala. 41, 208 So.2d 788 (1968); *Broyles v. Brown Engineering Company,* 275 Ala. 35, 151 So.2d 767 (1963). As such the contract consummated between the parties in April of 1980, including the noncompetition clause, remained in effect until the defendant terminated the contract.

## II. THE CHOICE OF LAWS PROVISION IN THE CONTRACT BETWEEN THE PARTIES.

The contract that existed between Hughes and PCC contained a provision stating:

This agreement should be interpreted in accordance and abide by the laws and regulations of the State of Massachusetts.

It is plaintiff's contention that this clause should not be enforced and that the laws of Alabama should apply. Plaintiff's central argument for this proposition comes from *Blalock v. Perfect Subscription Co.,* 458 F.Supp. 123 (S.D.Ala.1978), 599 F.2d 743 (5th Cir.1979).[1] Defendant PCC argues that the contract should be enforced according to its terms and the laws of Massachusetts should apply. Under Massachusetts law a noncompetition provision is not prohibited, as it is in Alabama under certain circumstances, and Massachusetts law also provides for double or treble damages for unfair or deceptive business action. Mass.Gen.Laws c. 93A. Accordingly plaintiff asserts that Alabama law should apply because covenants restricting competition are generally disfavored and there is no provision for double or treble damages for breach of such an agreement in Alabama. Stated simply, the laws of Alabama will be more advantageous for the plaintiff and the laws of Massachusetts will be more advantageous for the defendant.

The issue thus becomes which law should this Court properly apply. The contract was formed after negotiations between Charles Hughes and Peter Sarmanian. The contract was later consummated when Sarmanian executed a sales agency agreement and mailed it to Hughes in Alabama, who apparently accepted it there. Immediately thereafter the plaintiff commenced to represent the defendant in the southeast region. From the pleadings and briefs filed herein it appears that Hughes, on behalf of the plaintiff, initiated the discussions and negotiations which eventually led to the contract by traveling to Massachusetts to meet with the officers of the defendant. Plaintiff now seeks to escape from a provision of the contract which resulted.

**1.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Pritchard,* 661 F.2d 1206, 1209 (11 Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Plaintiff relies heavily upon *Blalock v. Perfect Subscription Co., supra*. In *Blalock*, the plaintiff was an Alabama citizen who had entered into a contract with a Pennsylvania corporation whereby the plaintiff would sell magazines in South Alabama and part of Northwest Florida for the defendant. The contract in *Blalock* recited that the laws of Pennsylvania would govern the contract and the agreement also contained a noncompetition clause which forbade the plaintiff from selling the magazines of a competitor during the term of the agreement and for 120 days thereafter. *Blalock* at 125. The district court, J. Hand, ruled that the choice of law provision was not controlling. Because of no Alabama decision on point, the court looked to the Second Restatement of Conflict of Laws, Section 187, which provides:

§ 187. Law of the State Chosen by the Parties

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Judge Hand turned to § 187(2)(b) and found that the noncompetition clause in the plaintiff's contract "flies in the face of the public policy of Alabama" and thus the law of Pennsylvania would not govern the agreement. Judge Hand further found that Alabama had a greater material interest in the determination of the issue and that Alabama law would have applied "but for the contractual choice of Pennsylvania." *Blalock* at 127. This decision was affirmed by the then Fifth Circuit. Plaintiff here argues that provision IID of its contract violates a fundamental policy of Alabama and is thus void. The contractual provision provides:

THE AGENT hereby agrees that, since he is an active agent for Printed Circuit Corporation and its affiliate Proto Circuit Corporation he will not represent any other firm within the printed circuit industry that will be competitive as to the products, services and engineering sales that are an integral part of this corporation and/or its affiliate.

Plaintiff asserts that as this provision is void on its face and cannot be upheld under Alabama law, the laws of Massachusetts should not govern this contractual dispute by virtue of § 187(2)(b). Defendant PCC counters by arguing that the noncompetition clause is not void as a matter of Alabama law and the laws of Massachusetts as set forth in the contract should be applied. Hughes and PCC both center their arguments around the *Blalock* decision.

In contract actions the existing general rule of law in Alabama with regards to conflict of laws is that of "lex loci contractus." That doctrine simply states that the contract is governed as to validity, interpretation, and obligation by the law of the place where it is made. *Western Union Telegraph Co. v. Favish*, 196 Ala. 4, 71 So. 183 (1916). This is still the general rule of law in Alabama today. *Fleming v. Pan Am. Fire & Cas. Co.*, 495 F.2d 535 (5th Cir.1974); *United States Fidelity & Guar. Co. v. Slifkin*, 200 F.Supp. 563 (N.D.Ala. 1961); *Macey v. Crum*, 249 Ala. 249, 30 So.2d 666 (1947); *J.R. Watkins Co. v. Hill*,

214 Ala. 507, 108 So. 244 (1926). Under this general rule the laws of Alabama would arguably apply as the acceptance of the contract occurred in Alabama. However the "lex loci" rule applies *except where the parties clearly appear to have legally contracted with reference to the laws of another jurisdiction* (emphasis added). *J.R. Watkins,* at 509. Therefore under the prevailing and traditional rule of law in Alabama, the laws of Massachusetts should govern this action as the parties have manifested an intention by the terms of the contract that Massachusetts law should govern. However this rule is qualified. Although the exception to the "lex loci" rules control the validity and construction of the contract, the law of the *forum* operates with respect to the remedy available to enforce the contract. *Macey v. Crum,* 249 Ala. 249, 252, 30 So.2d 666, 669 (1947); *Western Union Tel. Co. v. Hill,* 163 Ala. 18, 26, 50 So. 248, 251 (1909). *See,* Note, Choice of Law Considerations in Alabama, 7 Cum.L.Rev. 89, 95 (1976). As applied to this case the laws of Massachusetts should govern the validity and construction of the contract with the *remedy* for breach coming from the "lex fori" or forum, Alabama.

How then does this square with the *Blalock* decision? The determination of this issue has yet to be reached by a court sitting in Alabama. However, the two rules of law are not entirely in conflict with one another. Provided that a basic and fundamental tenet of Alabama public policy is not violated by the express provisions of the contract, the exception to the "lex loci" rule should be applied. Should a contractual provision be at odds with a fundamental policy of Alabama then the court may, as in *Blalock,* disregard the choice of law provision in the contract and look to the Second Restatement rule. Accordingly, as applied to this case, the law of Massachusetts will control the validity and interpretation of the contract and Alabama law will govern the remedy *provided* that the noncompeti-

tion clause is not violative of the public policy of Alabama.

## III. THE EXCLUSIVE AGENCY PROVISION.

Section IID of the contract between Hughes and PCC provides:

The AGENT hereby agrees, that since he is an active agent for Printed Circuit Corporation and its affiliate Proto Circuit Corporation, he will not represent any other firm within the printed circuit industry that will be competitive as to the products, services and engineering sales that are an integral part of this Corporation and/or its affiliate.

Defendant PCC asserts by way of answer and counterclaim that this provision prohibits plaintiff's recovery of commissions from sales in that Hughes' concurrent representation of Accutronics violates the above mentioned noncompetition clause.[2] Plaintiff argues that this provision is void on its face as a matter of Alabama law. As stated above, if this particular provision is found to violate Alabama public policy then the exception to the "lex loci" rule as to choice of laws will not apply and the Court may look to the Second Restatement to determine the appropriate applicable laws.

Thus the issue becomes whether the noncompetition clause is void as a matter of law because it is in conflict with the public policy of Alabama. Plaintiff asserts that the noncompetition clause is void under § 8–1–1 Code of Alabama (1975), which provides:

§ 8–1–1. Contracts restraining business void; exceptions.

(a) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind otherwise than is provided by this section is to that extent void.

(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, serv-

---

**2.** The Court finds PCC's contention that Hughes forfeited commissions due to an alleged violation of the noncompetition clause untenable.

PCC's remedy is the counterclaim for damages caused by this dual representation.

ant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein.

(c) Upon or in anticipation of a dissolution of the partnership, partners may agree that none of them will carry on a similar business within the same county, city or town, or within a specified part thereof, where the partnership business has been transacted. (Code 1923, §§ 6826, 6827, 6828; Acts 1931, No. 546, p. 647; Code 1940, T. 9, §§ 22, 23, 24.)

This statute represents the general rule that contracts in restraint of trade are void, as well as the exceptions to that general rule. The public policy of Alabama is that such restraints are disfavored by the law as they tend to impoverish the individual. *Devoe v. Chatham*, 413 So.2d 1141 (Ala. 1982). Moreover, the courts of Alabama have continually upheld such restrictions within the specified exceptions in the statute. *Id.*

The Court is also ever mindful of the fact that in *Blalock* the plaintiff was an individual and here the party seeking to escape from the provisions of the contract is a corporation who, by virtue of their business, represents large numbers of clients and is not disadvantaged by unequal bargaining power. Moreover, it is the plaintiff who initiated the negotiations and accepted the contract who now seeks to avoid the contractual provision.

The exceptions to the general statutory rule against restraint of trade include: restrictions in the dissolution of a partnership, restrictions following the sale of the goodwill of a business, and, as here, a restrictive noncompetition clause in an employment contract. Alabama courts have consistently upheld these restrictive provisions provided certain guidelines of fairness are present. The guidelines established by the Alabama courts include:

1. the employer has a protectable interest;
2. the restriction is reasonably related to that interest;
3. the restriction is reasonable in time and place;
4. the restriction imposes no undue hardship on the employee.
5. there must be adequate consideration for the restriction.

*Kemper v. Cox and Assoc.*, 434 So.2d 1380 (Ala.1983); *Devoe v. Chatham, supra; Doughtry v. Capital Gas Co.*, 285 Ala. 89, 229 So.2d 480 (1970).

Plaintiff contends that this Court need not look to the fairness guidelines to determine the validity of the noncompetition clause. Plaintiff asserts that since it operates as an independent contractor, the restrictive clause is void on its face. This is indeed the law in Alabama with regard to employment restraints on independent contractors. *Odess v. Taylor*, 282 Ala. 389, 211 So.2d 805 (1968); *Premler Industrial Corp. v. Marlow*, 292 Ala. 407, 295 So.2d 396 (1974); *C & C Products v. Fidelity and Deposit Co. of Maryland*, 512 F.2d 1375 (5th Cir.1975). The reasoning for this rule is that the exception to the general statutory rule against contracts of restraint applies to an "agent, servant, or employee" and not to an independent contractor. Section 8–1–1(b).

Defendant does not dispute the fact that Hughes acted as an independent contractor for PCC. However, defendant asserts that the restriction placed upon the plaintiff by the contract was merely *partial*, not total, and therefore it is irrelevant that plaintiff is an independent contractor as a *partial* restraint is valid under Alabama law. *Alabama-Tennessee Natural Gas Co. v. City of Huntsville*, 275 Ala. 184, 153 So.2d 619 (1963); *Famex v. Century Insurance Services, Inc.*, 425 So.2d 1053 (Ala.1982). Defendants are correct that partial restraints of trade may be upheld "when properly restricted as to territory, time, and persons, where they are supported by adequate consideration." *Terry Haute Brewing Co. v. McGeever*, 198 Ala. 474, 480, 73 So. 889

(1916). This rule has been applied continuously by Alabama courts. *Famex, supra; Reed v. Herren,* 423 So.2d 139 (Ala.1982); *Hibbett Sporting Goods, Inc. v. Biernbaum,* 391 So.2d 1027 (Ala.1980) (a commercial lease); *Alabama-Tennessee Natural Gas Co. v. City of Huntsville,* 275 Ala. 184, 153 So.2d 619 (1963); and *Buckalew v. Niehass,* 249 Ala. 585, 32 So.2d 299 (1947) (residential deed).

This Court is of the opinion that the restrictive covenant was merely a partial restraint on trade. Hughes represented many clients as a manufacturer's representative in Alabama and the southeast. The only restraint placed upon Hughes by the contract was that they were prevented from simultaneously representing other manufacturers of printed circuit boards. This did not prevent the plaintiff from representing other electronic component manufacturers. By representing PCC, Hughes was not prevented from representing the many other clients which it had throughout the southeast. Does the fact that this was merely a partial rather than total restraint make a difference given the fact that the plaintiff was an independent contractor? This Court must answer in the negative. In *Gafnea v. Pasquale Food Co., supra,* a noncompetition clause was held valid against a franchisee of a pizza restaurant. The Court found that the franchisee was only restrained for a narrow distance and a short period of time. Likewise, the franchisee was free to operate another business other than a pizza restaurant. *Gafnea,* at 1369. Plaintiff would have this Court to believe that only franchise cases are subject to the partial restraint rule; however, there is authority for the rule that independent contractors are likewise subject to the rule that a partial restraint of trade is valid. In *Famex, supra,* the defendant, Century Insurance Services, Inc. (Century), was an independent insurance agency which entered into an agreement with Famex (a subsidiary of Fireman's Fund Insurance Company) where Century would act as a Famex sales representative. Century eventually sold several coverages to Famex insureds on behalf of other insurance companies and Famex brought suit alleging breach of a noncompetition clause in the agency contract. The court held that the restraint was valid as only a partial restraint of trade in that Century was only prohibited from soliciting Famex insureds for other insurance companies. Therefore the restrictive clause was declared valid and enforceable.

■ As applied to the instant case, it is clear that the fact that Hughes was an independent contractor makes no difference as to the validity of this restriction since it is only a partial restraint of trade. In *Famex,* Century was not the sole seller of the plaintiff's insurance coverage, but one of many sellers. Likewise PCC is not the sole client of Hughes, but one of many in this region of the country. This Court's ruling that the noncompetition clause is valid does not conflict with *Blalock v. Perfect Subscription Co., supra,* as the question of a partial restraint on trade was not addressed by the court. Moreover the plaintiff in *Blalock* was only in one line of business, selling magazines, but here the plaintiff represents numerous clients with a somewhat diverse line of products. Accordingly this Court holds that the rule that partial restraints of trade are valid is applicable to independent contractors as well as others, provided the fairness guidelines of *Kemper v. Cox and Assoc.* are met with respect to the noncompetition clause.

Addressing the factors that determine the validity of a restrictive noncompetition clause it is apparent that the contractual clause in this case is due to be upheld as valid and binding. Defendant PCC had a protectable interest in its goodwill and nondisclosure of trade secrets and the noncompetition clause is reasonably related to that interest. The restriction is reasonable as to time in that plaintiff was prevented from representing other circuit board manufacturers during the existence of the contractual relationship with PCC. The restrictive noncompetition clause was likewise reasonable as to place in that restrictions against statewide solicitation have been upheld. *Kemper v. Cox and Assoc.,* 434 So.2d 1380

(Ala.1983). Also the restriction did not impose an undue hardship upon the plaintiff as Hughes was free to represent its other clients and other electronic component manufacturers. Although there appears to be no recited consideration in the contract for the restrictive clause, continued employment is adequate consideration under Alabama law for such a restriction. *Daughtry v. Capital Gas Co.*, 285 Ala. 89, 92, 229 So.2d 480 (1970).

■ This Court expressly finds that the restrictive noncompetition clause in the contract between Hughes and PCC is valid and is not violative of a fundamental public policy of Alabama. Therefore, as the noncompetition clause is due to be upheld, the proper law to be applied in this action is that of Massachusetts with respect to interpretation and validity and the law of Alabama, the forum, with respect to the remedy.

## IV. THE DEFENDANT AS A FOREIGN CORPORATION NOT QUALIFIED TO DO BUSINESS IN ALABAMA.

Finally, plaintiff has moved for partial summary judgment to strike defendant's answer and counterclaim. The counterclaim filed by PCC against Hughes seeks damages arising from Hughes' dual representation of PCC and Accutronics and asserts a claim for breach of the noncompetition clause, breach of fiduciary duty, interference with an existing and prospective advantage, interference with business relations, and a violation of Mass.Ann. ch. 93A § 1. It is not in dispute that defendant is a foreign corporation not qualified to do business in Alabama. On the basis of this undisputed fact plaintiff seeks to strike defendant's answer and counterclaim pursuant to § 10–2A–247(a) Code of Alabama (1975), which states in pertinent part:

§ 10–2A–247. Transacting business without certificate of authority.

(a) All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held void at the

action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity.

Stated simply, § 10–2A–247(a) prevents a nonqualified foreign corporation from enforcing its contracts in the courts of Alabama. *Boles v. Midland Guardian Co.*, 410 So.2d 82 (Ala.Cir.App.1982). Were this merely the case here, PCC would be estopped from asserting their counterclaim. However, the Alabama qualification statute is penal in nature and in derogation of the common law; therefore it should be strictly construed. *Aim Leasing Corp. v. Helicopter Medical Evaluation, Inc.*, 687 F.2d 354 (11th Cir.1982); *First Bank of Russell County v. Wells*, 358 So.2d 435, 437 (Ala. 1978); *Linton & Co., Inc. v. Robert Reed Engineers, Inc.*, 504 F.Supp. 1169, 1173 (M.D.Ala.), *aff'd* 664 F.2d 295 (11th Cir. 1981). This strict construction however does not change the rule that when a nonqualified foreign corporation "does business" in Alabama, that corporation cannot enforce a contract in Alabama courts. *Calvert Iron Works, Inc. v. Algernon Blair, Inc.*, 284 Ala. 655, 227 So.2d 424 (1969); *Birmingham Term. Assocs. v. United Produce & Prods. Equip. Co.*, 289 Ala. 80, 265 So.2d 863 (1972); *C & C Prods., Inc. v. Premier Indus. Corp.*, 290 Ala. 179, 275 So.2d 124 (1972). This doctrine is also applicable in diversity cases in federal court. *M & R Construction v. National Homes Corp.*, 286 F.2d 638 (5th Cir.1961); *Advance Industrial Security v. William J. Burns International Detective Agency*, 377 F.2d 236 (5th Cir.1967).

However an exception to this rule exists for foreign corporations engaged in interstate commerce even though not qualified to do business in Alabama. Such interstate corporations are welcome to use the courts of Alabama to enforce their contracts. *See, Carbon Processing Company v. Lapeyrouse Grain Corp.*, 779 F.2d 1541 (11th Cir.1986); *Sanjay v. Duncan Construc-*

tion Co., 445 So.2d 876, 880 (Ala.1984); *Kentucky Galvanizing Co. v. Continental Gas Co.*, 335 So.2d 649 (Ala.1976); *First Investment Co. v. McLeod*, 363 So.2d 774 (Ala.Cir.App.1978). Thus the question becomes whether the defendant is sufficiently engaged in interstate commerce to be exempt from the Alabama nonqualified corporation statute.

The plaintiff is one of many PCC manufacturer's representatives throughout the country. Hughes represented PCC in the southeast, soliciting sales in Alabama, Georgia, Tennessee, Mississippi, North Carolina, and South Carolina. The fact that most of the sales were made in Alabama and Georgia is irrelevant to this issue. In *Kentucky Galvanizing, supra*, a nonqualified foreign corporation had engaged in the solicitation of orders in Alabama and delivered its products into Alabama incident to the solicitation. The products were manufactured outside of Alabama and shipped to customers within the state. The solicitation was conducted by agents of the foreign corporation. The court there found that Kentucky Galvanizing was sufficiently engaged in interstate commerce so as to enforce its contracts in the courts of Alabama although not qualified to do business under § 10–2A–247(a). The same can be said for PCC. PCC's business activities in Alabama represented merely a segment of its nationwide sales network and thus was not purely intrastate. Therefore PCC may use the Alabama courts to enforce this contract and the counterclaim is proper.

Accordingly plaintiff's motion for partial summary judgment is due to be denied and defendant's motion for partial summary judgment is due to be granted in part in that the noncompetition clause is valid and enforceable and that PCC is not subject to the Alabama nonqualified foreign corporation statute, and denied in part in that the laws of Massachusetts do not govern the remedy for any alleged breach of contract in this action. A separate order will issue.

### ORDER

The aboved entitled civil action is before the Court on cross motions for partial summary judgment filed by plaintiff Hughes Associates, Inc. (Hughes) and defendant Printed Circuit Corporation (PCC).

Plaintiff and counterdefendant Hughes has moved the Court to strike the defendant's answer and counterclaim because the defendant is a foreign corporation not qualified to do business in Alabama and to declare a noncompetition clause in the contract between the parties void as a matter of law. Defendant and counterplaintiff PCC has moved the Court to declare that the laws of Massachusetts should govern this action, that the noncompetition clause is valid and enforceable, and that the Alabama nonqualified corporation statute does not apply to this defendant as it engages in interstate commerce. After careful consideration of the pleadings, arguments of counsel, briefs filed in support thereof and opposition thereto, and the applicable law, the Court concludes: (1) that the motion for partial summary judgment filed herein by plaintiff Hughes is due to be denied; (2) that the cross motion for partial summary judgment by defendant PCC is due to be granted in part in that the noncompetition clause is valid and enforceable, that PCC is not subject to the Alabama nonqualified foreign corporation statute, and that the laws of Massachusetts should govern the interpretation and validity of the contract between plaintiff and defendant, and denied in part in that Mass.Gen.Laws Ch. 93A does not govern the remedy for any alleged breach of contract in this action. In accordance with the Memorandum of Decision entered contemporaneously herewith, it is

ORDERED and ADJUDGED that the motion for partial summary judgment by plaintiff Hughes Associates, Inc. be and the same hereby is DENIED. It is further

ORDERED, ADJUDGED and DECLARED that the motion for partial summary judgment by defendant Printed Circuit Corporation be and the same hereby is GRANTED in that the noncompetition clause in its contract with plaintiff Hughes Associates, Inc. is valid and enforceable,

that Printed Circuit Corporation is not subject to § 10–2A–247(a) (the Alabama non-qualified corporation statute), that the laws of Massachusetts shall govern the validity and interpretation of the contract between plaintiff Hughes and defendant PCC, and DENIED in that Mass.Gen.Laws ch. 93A does not apply to the remedy for any alleged breach of contract in this action.