THOMAS, Judge.
Gulf Shores . Plantation Condominium Association (“GSP”) appeals from a summary judgment entered by the Baldwin Circuit Court (“the trial court”) in favor of the Resort Conference Centre Board of Directors (“RCC”). The relevant facts are as follows. GSP and RCC, along with Gulf Shores Plantation Planned Unit Development Property Owner’s Association, Inc., and Plantation Palms . Condominium Owners Association,. Inc. (hereinafter, collectively referred to. as “the other properties”), entered into a written agreement in January 2000 (“the 2000 agreement”) providing, in relevant part, RCC and the other properties access to amenities, such as an indoor pool, at property owned or managed by GSP. The 2000 .agreement included the following paragraphs regarding payment for use of the amenities:
“4. Payment of Costs of Operation, Maintenance and Repair of Certain Common Areas and Amenities. Each Association hereby agrees to pay a portion of the expense of operating (including utilities), maintaining and repairing the amenities and common areas listed on Exhibit ‘A’. The percentage of such expenses to be paid by each Association is set forth on Exhibit ‘B’. The Associations shall pay their respective portions of such expenses at such intervals as may be agreed upon by the Associations. If any Association shall fail or refuse to pay its portion of such expenses when due, its members may be denied the use of the amenities and common areas administered by the other Associations, in addition to any other remedies which such Associations may have ¿gainst the non-paying Association. Costs of operation, maintenance and repair covered by this Agreement, as to any amenity or common area listed on Exhibit ‘A’, shall *1042 be the routine and periodically recurring expenses associated with the operation and maintenance of such amenity or cotnmon area. Costs of reconstruction or substantial repair on account of casualty or catastrophic" events are not governed'by this Agreement, but shall be borne by the individual Association which administers the amenity or common . area which was damaged or destroyed. ' Each Association agrees to keep insured against casualty loss or damage, at its own expense, the amenities and common areas administered by it to the extent'that such insurance is reasonably available.
' “5, jDetermination of Costs of Operation Maintenance and Repair, Each Association agrees to cause its management company to determine the costs of operating, maintaining and repairing the amenities and common areas listed on Exhibit ‘A’ and administered by it. Such costs shall be calculated subsequent to June 30 of each year for the twelve month period ending on such date, and the amount so determined shall determine the amount to be paid by the Associations for the calendar year commencing the following January 1. Such amount shall be provided to the other Associations as soon as practicable after June 30 of each year for use by them in formulating their budgets for the following calendar year.”
The record includes a judgment entered by the trial court in February 2011 that incorporated • a, consent . agreement between GSP and RCC terminating the 2000 agreement as between them.[1] The record indicates that RCC continued to remit monthly payments to GSP and that GSP accepted the monthly payments and com tinued to allow RCC access to its amenities. It is undisputed that RCC continued to use GSP’s amenities until approximately mid April 2013, after negotiations for a new agreement had failed, at which time GSP discontinued RCC’s access to its amenities and RCC ceased making monthly payments.
On May 31, 2013, GSP filed an amendment to a complaint it had previously filed against the other properties .in the trial court, asserting claims of breach of contract, waiver and judicial estoppel, account stated, and open account against RCC, based on allegations that RCC had an outstanding, balance relating to its use of GSP’s amenities.[2] RCC filed an answer on June 27, 2013, and raised various affirmative defenses. On September 22, 2014, RCC filed a motion for a summary judgment and attached exhibits in support of its motion. GSP responded to the motion for a summary judgment on October 14, 2014, asserting, among other things, that the doctrine of unjust enrichment precluded a summary judgment in favor of RCC. On October 17, 2014, RCC filed á motion to strike the portion of GSP’s response alleging unjust enrichment because, according to RCC, that argument was not raised in the initial pleadings; the record does not indicate that the trial court 'entered an order on the motion to strike. The trial court entered an order on November 25, 2014, granting RCC’s motion for a summary judgment. GSP filed a notice of appeal to our supreme court on January 5, 2015; our supreme court trans- *1043 ferred this appeal t.o this court pursuant § 12-2-7(6), Ala.Code 1975, on January 15, 2015.
“ ‘ “This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light' most favorable to the nonmovant, Wilson v. Brown, 496 So.2d 756, 758, (Ala.1986). Once the movant makes a pri-ma facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to' be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).’”
“Prince v. Poole, 935 So.2d 431, 442 (Ala.2006) (quoting Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004)).”
Brown v. W.P. Media, Inc., 17 So.3d 1167, 1169 (Ala.2009).
GSP argues in its brief on appeal that the parties had entered into a quasi-contract (“the implied contract”) and that the trial court- failed to apply the terms of the implied contract, that- RCC’s failure to compensate GSP for the use of its amenities resulted in unjust enrichment, and that- the trial court improperly applied the doctrines of res judicata and judicial estop-pel.
“‘It is a general rule of law that where parties who have entered into a contract continue their respective performances under the terms of the contract beyond the éxpiration date of the contract, the parties are ’deemed to have mutually agreed to a new implied contract encompassing' the same terms. A. Corbin, Contracts, § 684; W. Williston, Contracts, § 90. While there is no Alabama authority directly [on] point, the Alabama cases recognizing that.a contract may be implied in fact from circumstances demonstrating a mutual intent to so contract indicate to this Court that Alabama would follow the majority rule set out above. See, e.g., Sims v. Etowah County Board of Education, 337 So.2d 1310 (Ala.1976); Montgomery Water Works and Sanitary Sewer Board v. Norman, 282 Ala. 41, 208 So.2d 788 (1968); Broyles v. Brown Engineering Company, 275 Ala. 35, 151 So.2d 767 (1963).’
“[Blalock v. Perfect Subscription Co., 458 F.Supp. 123,] 126 [ (S.D.Ala.1978) ].”
Gafnea v. Pasquale Food Co., 454 So.2d 1366, 1369 (Ala.1984).
As previously stated, after the 2000 agreement was terminated, GSP continued to allow RCC access to its amenities and to provide monthly invoices to RCC. The amount invoiced was based upon the provisions set forth in the 2000 agreement; RCC continued to pay the invoices it received from GSP in full through December 2012 and in part for the first three months *1044 of 2013. The record indicates that GSP sent RCC a letter on March 19, 2013, with a proposed new agreement; RCC notified GSP that it would not accept the proposed new agreement via a letter dated April 9, 2013. Shortly thereafter, GSP denied RCC further access to its amenities and RCC immediately stopped all payments to GSP. Both parties agree that there was no written or oral agreement in place but that they were continuing the status quo that existed under the 2000 agreement until a new agreement could be reached.[3] After a review of the various arguments set forth in GSP’s brief, it appears that the actual question before this court is whether, pursuant to the provisions of the 2000 agreement, RCC continued to owe GSP for its past use of GSP’s amenities.
GSP argues that the provisions of the 2000 agreement referenced above (specifically, paragraph 5) provided that RCC would be billed 18 months in arrears for its use of GSP’s amenities. Therefore, GSP asserts, RCC continued to be responsible to pay the invoices it received from GSP after RCC was denied access to its amenities. We disagree with this characterization of the 2000 agreement. GSP filed a complaint in 2009 seeking termination of the 2000 agreement (“the 2009 action”);[4] in that complaint, GSP did not allege that RCC owed an arrearage or seek payment from RCC for an outstanding balance. Additionally, the trial court’s judgment in the 2009 action that incorporated the parties’ consent agreement in 2011 did not reference or order RCC to bring current any outstanding payments pursuant to the 2000 agreement. Applying the same provisions of the 2000 agreement to the present case, we cannot agree that the language of the 2000 agreement supports GSP’s claim for an 18-month arrearage.
However, documentation in the record indicates that the amount GSP billed RCC for use of its amenities increased from $1,232.66 per month in 2012 to $3,307.93 per month beginning in January 2013. The parties agree that RCC used GSP’s amenities in January, February, March, and part of April 2013, after which time GSP denied RCC access to its amenities. Nonetheless, documentation in the record indicates that RCC remitted only $1,300 per month to GSP for use of GSP’s amenities during those months. John Linn, a past president and current member of RCC testified in his deposition that RCC disagreed with the increased monthly payment and that, after reviewing the itemized expenses, RCC had unilaterally determined that $1,300 was the correct amount for which it should be billed based upon the terms of the 2000 agreement. Although we agree that RCC’s liability ended when GSP began denying RCC access to its amenities in April 2013, there is a question of material fact regarding what amount, if any, RCC owes GSP for actual use of its amenities in 2013.[5]
Because we conclude that a question of material fact exists as to whether RCC potentially owes a balance to GSP for the use of GSP’s amenities in 2013, the trial court’s summary judgment, insofar as it determined that RCC did not owe GSP *1045 any amount, is reversed. However, we affirm the trial court’s summary judgment in favor of RCC insofar as it determined that RCC was no longer liable for payment for use of GSP’s amenities after GSP denied RCC access to the amenities in April 2013. This case is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. The 2000 agreement remained in effect as to GSP and the other properties,

. GSP first filed a complaint in the trial court on December 12, 2012, against the other properties who were parties to the 2000 agreement; GSP amended the complaint on May 31, 2013, to add RCC as a defendant. GSP settled its claims against the other properties, and. the other properties are not parties to this appeal.

. RCC contends that the parties were operating under a ''month-to-month'’ agreement; however, RCC does not assert that GSP failed to provide proper notice that it was terminating such an agreement.

. The complaint filed in the 2009 action is included in the record on appeal.

. Based on our determination that RCC was not billed 18 months in arrears pursuant to the 2000 agreement and that a question of material fact exists regarding payment for the months that RCC actually used GSP’s amenities in 2013, we need not address the remaining issues that GSP raises on appeal.